Sullivan
No. 82-155

# THE STATE OF NEW HAMPSHIRE

v.

# FORREST J. BALL

December 12, 1983

228

*Gregory H. Smith*, attorney general (*Donald J. Perrault*, assistant attorney general, on the brief and orally), for the State.

*McNamara & Larsen P.A.*, of Lebanon (*Mark A. Larsen* on the brief and orally), for the defendant.

DOUGLAS, J. The sole issue in this appeal is whether the Trial Court (*Johnson*, J.) correctly ruled that the police officer had probable cause to seize a partially smoked hand-rolled cigarette during a lawful vehicle stop. We hold that the court erred and therefore reverse.

The defendant was stopped by State Trooper Hunter and Trooper-trainee Hamilton for driving an uninspected motor vehicle. After approaching the vehicle, one of the troopers observed several partially smoked manufactured cigarettes, as well as a partially smoked hand-rolled cigarette, in an ashtray located on the top of the dashboard. Unable to identify the contents of the hand-rolled cigarette by sight, the officer (the record is unclear as to which one) reached in, removed it from the ashtray and smelled it. He determined that the cigarette contained marijuana, and the defendant was placed under arrest. A search of the defendant's person led to the discovery of additional contraband.

The defendant was indicted for unlawful possession of marijuana, a controlled drug. RSA 318-B:26, I(b)(2) (Supp. 1981). Prior to his trial, the defendant filed a motion to suppress evidence of the hand-rolled cigarette and the fruits of the subsequent search. He claimed that the police did not have probable cause to seize the cigarette because observation of the cigarette, alone, did not give rise to a reasonable belief that it contained contraband. The trial court denied the motion. Following the admission of the challenged evidence, the defendant was convicted as charged, and he now appeals.

The defendant argues that the warrantless seizure of the hand-rolled cigarette and the subsequent search of his person were illegal under both the Federal and New Hampshire Constitutions, U.S.

CONST. amend. IV; N.H. CONST. pt. I, art. 19, because they were not based on probable cause.

██ When a defendant, as in this case, has invoked the protections of the New Hampshire Constitution, we will first address these claims. *Compare State v. Miskolczi*, 123 N.H. 626, 465 A.2d 919 (1983) (court decided defendant's rights under the Federal Constitution rather than the State Constitution due to his failure to present, argue, or brief any legal issues involving the State constitutional provision). As more fully discussed below, although we have often treated Federal and New Hampshire constitutional protections similarly, our citizens are entitled to an independent interpretation of State constitutional guarantees.

█ We live under a unique concept of federalism and divided sovereignty between the nation and fifty States. The New Hampshire Constitution is the fundamental charter of our State. The sovereign people gave limited powers to the State government, and the Bill of Rights in part I of the New Hampshire Constitution protects the people from governmental excesses and potential abuses. When State constitutional issues have been raised, this court has a responsibility to make an independent determination of the protections afforded in the New Hampshire Constitution. If we ignore this duty, we fail to live up to our oath to defend our constitution and we help to destroy the federalism that must be so carefully safeguarded by our people. The Supreme Court of the State of Oregon recently recognized this responsibility and stated:

> "The point is . . . that a state's constitutional guarantees . . . were meant to be and remain genuine guarantees against misuse of the state's governmental powers, truly independent of the rising and falling tides of federal case law both in method and specifics. State courts cannot abdicate their responsibility for these independent guarantees, at least not unless the people of the State themselves choose to abandon them and entrust their rights entirely to federal law."

*State v. Kennedy*, 295 Or. 260, 271, 666 P.2d 1316, 1323 (1983).

██ "This court has historically viewed the rights of people in light of both the United States Constitution and the Constitution of the State of New Hampshire." *State v. Settle*, 122 N.H. 214, 217, 447 A.2d 1284, 1285 (1982). While the role of the Federal Constitution is to provide the *minimum* level of national protection of fundamental rights, our court has stated that it has the power to interpret the

New Hampshire Constitution as more protective of individual rights than the parallel provisions of the United States Constitution. *State v. Settle*, 122 N.H. 214, 217, 447 A.2d 1284, 1285 (1982); *State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 497 (1979); *State v. Hogg*, 118 N.H. 262, 264, 385 A.2d 844, 845 (1978). The Supreme Court has recognized this authority and has stated that its holdings "[do] not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so." *Cooper v. California*, 386 U.S. 58, 62 (1967).

■■ Even if it appears that the Federal Constitution is more protective than the State Constitution, the right of our citizens to the full protection of the New Hampshire Constitution requires that we consider State constitutional guarantees. This is because any decision we reach based upon *federal* law is subject to review by the United States Supreme Court, whereas we have unreviewable authority to reach a decision based on articulated adequate and independent *State* grounds. *Michigan v. Long*, 103 S. Ct. 3469, 3475 (1983). Since this court is the final authority on New Hampshire law, initial resolution of State constitutional claims insures that the party invoking the protections of the New Hampshire Constitution will receive an expeditious and final resolution of those claims. Therefore, we will first examine the New Hampshire Constitution and only then, if we find no protected rights thereunder, will we examine the Federal Constitution to determine whether it provides greater protection.

■ The United States Supreme Court and its individual members have spoken on the State courts' independent responsibility for their States' constitutional law. In *Michigan v. Long, id.* at 3476, the Court stated: "'It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions.'" (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940)). Chief Justice Burger has stated: "State Courts . . . are responsible for first resolving issues arising under their constitutions and statutes and then for passing on matters concerning federal law." Year-End Report on the Judiciary 23 (1981). Independent interpretation of State constitutional provisions is now well established. *Reeves v. State*, 599 P.2d 727 (Alaska 1979) (independent interpretation of State constitutional provision protecting individuals from unreasonable search and seizure); *People v. Brisendine*, 13 Cal. 3d 528, 531 P.2d 1099, 119 Cal. Rptr. 315 (1975) (same); *State v. Kaluna*, 55 Hawaii 361, 520 P.2d 51 (1974) (same); *State v. Culotta*, 343 So. 2d 977 (La. 1976) (same); *State v. Brecht*, 157 Mont. 264, 485 P.2d 47 (1971) (same); *State v. Benoit*, 417 A.2d 895 (R.I. 1980) (same); *State v. Opperman*,

247 N.W.2d 673, 675 (S.D. 1976) (same); *State v. Badger*, 450 A.2d 336 (Vt. 1982) (same); *see also State v. Kennedy*, 295 Or. 260, 666 P.2d 1316 (1983) (independent interpretation of double jeopardy clause).

 Although in interpreting the New Hampshire Constitution we have often followed and agreed with the federal treatment of parallel provisions of the federal document, we never have considered ourselves bound to adopt the federal interpretations. In fact, we previously have deviated from United States Supreme Court pronouncements. In *State v. Hogg*, 118 N.H. 262, 385 A.2d 844 (1978), we held that *Bartkus v. Illinois*, 359 U.S. 121 (1959) is not binding on this court in construing the New Hampshire constitutional protection against double jeopardy, and stated: "The same separate sovereignty concept under which the United States Supreme Court has held that the Federal Constitution does not protect citizens from dual prosecutions permits the states independently to construe their own constitution as affording such protection." 118 N.H. at 264, 385 A.2d 845. *See also State v. Settle*, 122 N.H. 214, 447 A.2d 1284 (1982); *State v. Osborne*, 119 N.H. 427, 402 A.2d 493 (1979). One court has expressed in the following way the relationship between federal decisions and decisions made under State law:

> "This court like others has high respect for the opinions of the Supreme Court, particularly when they provide insight into the origins of provisions common to the state and federal bills of rights rather than only a contemporary 'balance' of pragmatic considerations about which reasonable people may differ over time and among the several states. It is therefore to be expected that counsel and courts often will refer to federal decisions, or to commentary based on such decisions, even in debating an undecided issue under state law."

*State v. Kennedy*, 295 Or. 260, 267, 666 P.2d 1316, 1321 (1983). We hereby make clear that when this court cites federal or other State court opinions in construing provisions of the New Hampshire Constitution or statutes, we rely on those precedents merely for guidance and do not consider our results bound by those decisions. *See Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983).

New Hampshire has a constitutional ban against unreasonable search and seizure that pre-dates the Federal Constitution. Part I, article 19, provides:

> "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his

papers, and all his possessions. Therefore, all warrants to search suspected places . . . are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; . . . and no warrant ought to be issued . . . [except] with the formalities, prescribed by law."

We begin our discussion by reiterating that we interpret part I, article 19, to reflect the intent of the framers that all searches and seizures must be reasonable. Unless a warrantless search falls within one of the few specifically established and well-delineated exceptions, it is *per se* unreasonable. *State v. Settle*, 122 N.H. 214, 218, 447 A.2d 1284, 1286 (1982) (construing N.H. CONST. pt. I, art. 19); *State v. Beede*, 119 N.H. 620, 625, 406 A.2d 125, 129 (1979), *cert. denied*, 445 U.S. 967 (1980) (same); *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980) (same).

The State has the burden of proving, by a preponderance of the evidence, that a warrantless search was constitutionally permissible. *State v. Theodosopoulos, supra* (construing N.H. CONST. pt. I, art. 19). The recognized exception on which the State relies in this case is the "plain view" doctrine.

A law enforcement officer, in certain circumstances, may seize objects which are in plain view. In reviewing the plain view cases, we recognize the following limitations on the doctrine: (1) The initial intrusion which afforded the view must have been lawful; (2) the discovery of the evidence must have been inadvertent; and (3) the incriminating nature of the evidence must have been immediately apparent. *E.g., Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971); *State v. Slade*, 116 N.H. 436, 438, 362 A.2d 194, 196 (1976). Thus, the plain view doctrine permits a law enforcement officer to seize clearly incriminating evidence or contraband without a warrant, if such evidence is inadvertently discovered during lawful police activity.

The sole question in this appeal is whether the incriminating nature of the evidence was immediately apparent. Every warrantless intrusion must be justified by articulable facts which would have supported the issuance of a warrant based on probable cause. *See State v. Beede*, 119 N.H. 620, 627, 406 A.2d 125, 130 (1979), *cert. denied*, 445 U.S. 967 (1980) (construing N.H. CONST. pt. I, art. 19). The probable cause required for warrantless search and seizure is at least as great as that required to support a warrant. *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137

(1979), *cert. denied*, 446 U.S. 983 (1980) (construing N.H. CONST. pt. I, art. 19); *see also State v. Thorp*, 116 N.H. 303, 306, 358 A.2d 655, 658 (1976). This court previously has held that "probable cause must, when challenged, be shown, after the search, to have existed before the search." *State v. Beede*, 119 N.H. 620, 626, 406 A.2d 125, 130 (1979), *cert. denied*, 445 U.S. 967 (1980) (construing N.H. CONST. pt. I, art. 19). Thus, before an item in plain view may be seized, the law enforcement official must have probable cause to believe the item is contraband or incriminating evidence.

 We note that the United States Supreme Court has recently spoken on the probable cause requirement of the plain view doctrine. In *Texas v. Brown*, 103 S. Ct. 1535 (1983), the Court held that, in view of the common use of balloons in packaging narcotics, the police officer had probable cause to believe that the balloon contained an illicit substance, and further stated that the plain view doctrine permits a warrantless seizure of a suspicious item. *Id.* at 1541–43. Although that decision is binding as a matter of Federal constitutional law, we choose not to follow it in interpreting our State Constitution.

 Seizure on mere suspicion is not enough. To allow a police officer to act upon less than probable cause would violate the protection against unreasonable search and seizure afforded in part I, article 19. It would allow an officer to seize anything in plain view on mere suspicion, thus permitting the unreasonable seizure of a person's property while a further investigation is made in an effort to find something incriminating. This is not permitted by part I, article 19. It is precisely one of the evils the framers sought to proscribe:

> "The presence or absence of probable cause is determined by reference to an objective standard designed to measure the probability or likelihood of criminal activity based upon a given set of facts and circumstances. The test is whether a reasonable and prudent person in the position of the officer who conducts the search or makes the arrest and possessed of his knowledge would believe that seizable items could be found or that an offense has been or is being committed."

*State v. Thorp*, 116 N.H. 303, 306–07, 358 A.2d 655, 658–59 (1976). "In determining the existence of probable cause, courts are not bound by rigid mathematical calculations. Rather, courts must approach the issue with a concern for the 'factual and practical considerations of everyday life on which reasonable and prudent men,

not legal technicians, act.'" *State v. Stevens*, 121 N.H. 287, 290, 428 A.2d 1241, 1243 (1981) (quoting in part *Draper v. United States*, 385 U.S. 307, 313 (1959)).

 It is clear that the expertise and experience of the law enforcement officer are relevant to the probable cause determination. Officers are entitled to draw reasonable inferences from the facts available to them in light of their knowledge and prior experience. We hold that if facts sufficient to provide probable cause to believe an object is incriminating are immediately apparent to the officer, the probable cause requirement of the plain view doctrine is met.

Turning to this case, we note that not all hand-rolled cigarettes contain contraband. Consequently, we cannot say that observation of a hand-rolled cigarette, by itself, would lead a reasonable and prudent person to believe that the cigarette contained an illegal substance. To transform mere suspicion about the contents of the hand-rolled cigarette into a reasonable belief based on probable cause, the officer must articulate additional corroborating facts. For instance, it might be shown that the arresting officer had the ability to distinguish hand-rolled marijuana and tobacco cigarettes by sight, or that he perceived the odor of marijuana, or that the defendant made a furtive gesture in an attempt to conceal the cigarette, or that the defendant's conduct was otherwise incriminating.

The record before us provides no evidence of such corroborating circumstances. As previously mentioned, the defendant was initially stopped for driving without an inspection sticker. The record shows no evidence that the defendant was driving erratically, that he was physically impaired or that he made a furtive gesture. Further, the record shows neither that the officers smelled marijuana nor that the defendant made any incriminating statements prior to seizure of the cigarette butt.

The record fails to show that the troopers had special expertise in identifying cigarettes containing illicit substances. On the contrary, the record states that Trooper-trainee Hamilton was unable to identify the cigarette, by sight, and that Trooper Hunter could not tell the difference between a hand-rolled tobacco cigarette and any other hand-rolled cigarette. It appears that the sole justification for the troopers' belief that the cigarette contained marijuana was that it was hand-rolled and pinched at the end.

 We hold that in this case the observation of the hand-rolled cigarette alone did not establish probable cause. It is true that, in some situations, a trained policeman's observations of certain types of contraband will be deemed sufficient to meet the

requirements of the plain view doctrine. An officer who has sufficient experience to recognize contraband and can support his belief that an object is contraband or incriminating evidence with articulable facts may meet the requirement of probable cause.

 The State argues that a trooper's conduct in reaching into the defendant's automobile to retrieve the suspicious-looking cigarette butt to examine it to determine that it did in fact contain marijuana was both reasonable and based upon probable cause. This two-step approach is not permitted under the plain view doctrine or under part I, article 19. Seizure is legitimate only if it is immediately apparent to the police that they have contraband or evidence before them. Probable cause must precede the intrusion; mere suspicion is not enough. To allow a police officer to seize an object on less than probable cause in order to further investigate whether it is contraband violates the defendant's protection against unreasonable search and seizure provided in part I, article 19. "[A]ny intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without [probable cause]." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

 The State argues that such an intrusion is "reasonable under the circumstances." This court has utilized well-delineated and specifically established exceptions as guidelines for judging the reasonableness of governmental intrusions. *Ad hoc* determinations of "reasonableness" introduce into the law enforcement and judicial process yet another flexible and confusing threshold determination to be made for the orderly and fair disposition of criminal cases. The framers did not intend the safeguards of the warrant requirement to be circumvented merely by allowing law enforcement officials to act reasonably under the circumstances. Constitutional guarantees were meant to be a uniformly mandated and clearly defined code of criminal procedure. Absent a recognized exception to the warrant requirement, a warrantless search is *per se* unreasonable.

Because the seizure was illegal under the New Hampshire Constitution, the court need not reach the federal issue.

*Reversed and remanded.*

SOUTER, J., did not sit; the others concurred.