Cheshire
No. 93-835

THE STATE OF NEW HAMPSHIRE

v.

MARK LUCIUS

July 27, 1995

*Jeffrey R. Howard,* attorney general (*Patrick E. Donovan,* assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices,* of Concord (*Paul Twomey* on the brief and orally), for the defendant.

HORTON, J. The defendant, Mark Lucius, was convicted on four counts of criminal solicitation, RSA 629:2 (1986), for solicitation of: (1) aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1994); (2) felonious sexual assault, RSA 632-A:3 (1986); (3) kidnapping, RSA 633:1 (1986); and (4) violation of child pornography laws, RSA 649-A:3 (Supp. 1994), after a jury trial in Superior Court (*Brennan,* J.). On appeal the defendant argues that the trial court erred: (1) by failing to disclose material, exculpatory information in an investigatory file concerning allegations against the State's main witness, in violation of the defendant's right to due process under the State and Federal Constitutions; (2) by imposing sentences in violation of double jeopardy provisions of the State and Federal Constitutions; and (3) by admitting the defendant's prior conviction for false imprisonment contrary to New Hampshire Rule of Evidence 404(b). We reverse the defendant's convictions and remand for a new trial.

The charges against the defendant stem from a series of events that occurred in the summer of 1991. The State's main witness, Anson Boudrieau, approached the defendant to inquire if the defendant knew of any way he could make some money. The defendant offered Boudrieau a number of suggestions including selling unwanted power tools and making a video with Boudrieau's

girlfriend. At some point the defendant asked Boudrieau to kidnap two young girls and to sexually assault them for the purpose of creating a videotape, which would later be sold for profit.

At trial, the defendant admitted asking Boudrieau to do this, but argued that he did so not with a purpose that Boudrieau in fact carry out his request. The defendant testified that Boudrieau had approached him with a plan to take pornographic pictures of Boudrieau's three-year-old niece. The defendant maintained that he proposed the plan to abduct older girls in order to divert Boudrieau from sexually assaulting his niece and to "string him along" until law enforcement officials could arrest him for an unrelated offense.

As part of his plan, the defendant suggested that Boudrieau abduct a young girl in their neighborhood. Boudrieau then approached the young girl's parents to inform them that somebody had nefarious plans for their child. As a result, the State Police were brought in to investigate. Boudrieau reluctantly agreed to help the police gather evidence against the defendant by wearing a microphone that would permit the police to monitor and record their conversations.

The defendant was indicted on four counts of criminal solicitation. Four days before trial, the defendant received a letter from the county prosecutor advising that Boudrieau was currently under investigation by the State Police regarding an allegation of sexual misconduct with a three-year-old child. On the first day of the trial, the defendant made a *Brady* request for production of the investigative file. *See Brady v. Maryland*, 373 U.S. 83 (1963). In support of his request, the defendant specifically stated that he needed the file to determine whether it contained allegations concerning Boudrieau's niece.

The court reviewed the State Police file *in camera*. The court denied the defendant access to it but gave counsel a summary description of its contents. The court stated that the record was very minimal, that it contained an allegation of sexual misconduct to a State agency, that the incident allegedly occurred on July 30, 1992, that the police had just begun their investigation within the last few weeks, and that sometime after August 6, 1993, Boudrieau became aware that he was under investigation.

The court prohibited the defendant from asking Boudrieau questions specifically mentioning the alleged sexual abuse, but allowed questions as to whether Boudrieau was under investigation for a "serious crime." The court also permitted the defendant to inquire into any bias Boudrieau may have resulting from his awareness that the same office prosecuting the defendant would be responsible for

prosecuting the witness if charges were brought as a result of the pending investigation, and to ask Boudrieau if he understood that involvement in criminal activity would affect his probation status.

On the date the court requested the file for *in camera* review, the State Police had a tape recording of their interview with the victim in the case, but neither included the tape in the file nor indicated in any manner that it existed. During that taped interview, the victim stated that Boudrieau sexually assaulted her. The tape also revealed that the victim referred to Boudrieau as "Unkie" and Boudrieau referred to the victim as his "niece," even though there was no such legal relationship between the two.

## I. Exculpatory Evidence

The defendant argues that the trial court's failure to turn over the file after *in camera* review, and the failure of the State Police to include the tape recording in that file, violated the defendant's right to due process as guaranteed by the State and Federal Constitutions. Because we reverse on the failure of the State Police to turn over the full investigatory "file," we need not address whether the trial court erred by refusing to grant the defendant access to the incomplete file.

We first address the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing federal law only as an aid to our analysis. *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because we find a violation of the State Constitution and reverse, we need not analyze the defendant's federal constitutional claim.

"There is no doubt that the prosecution has a duty to disclose evidence favorable to the accused where the evidence is material either to guilt or to punishment." *State v. Dedrick*, 135 N.H. 502, 507, 607 A.2d 127, 130 (1992) (quotation omitted). Although the misconduct may be attributable to the State Police rather than the county attorney's office, failure of the police to disclose exculpatory evidence to the prosecutor, who in turn could have turned it over to the defense, is treated no differently than if the prosecutor failed to turn it over to the defense. *See State v. Colbath*, 130 N.H. 316, 320-21, 540 A.2d 1212, 1214 (1988) (noting that the "State would be well advised to remind its police investigators of the rule in *Brady*").

We first determine whether the evidence withheld by the State was exculpatory, *see, e.g., State v. Arthur*, 118 N.H. 561, 563, 391 A.2d 884, 886 (1978), and then, if so, whether the evidence was material, therefore requiring reversal. *State v. Laurie*, 139 N.H. 325, 330, 653 A.2d 549, 553-54 (1995). Nondisclosed, exculpatory

evidence is material under the New Hampshire Constitution unless the State proves, beyond a reasonable doubt, that the undisclosed evidence would not have affected the verdict. *Id.*

■ The credibility of Boudrieau's testimony was crucial to the State's case. Even though the State introduced audio tape recordings of conversations between the defendant and Boudrieau that reveal the defendant's plan to abduct and rape young girls, Boudrieau was the State's main witness. The tapes are strong evidence that the defendant asked Boudrieau to commit the acts described on the tape. In order to convict the defendant of solicitation, however, the State must prove not only that he asked Boudrieau to commit these acts, but also that he did so with the purpose that Boudrieau in fact carry out his request. RSA 629:2, I. Evidence that Boudrieau eventually did sexually assault his "niece," as the defendant claimed he feared, could substantially bolster the defendant's contention that he proposed this plan in order to divert Boudrieau from acting on his desires to sexually assault her. Given the defendant's theory of the case and his testimony at trial, the evidence was exculpatory.

■ When the State withholds exculpatory evidence the conviction will not stand unless the State can prove beyond a reasonable doubt that the evidence withheld by the State would not have affected the verdict. *Laurie,* 139 N.H. at 330, 653 A.2d at 553-54. The facts demonstrate that the nondisclosed evidence was material. We conclude that the State failed to carry its burden and hold that the exculpatory evidence was material. Therefore, we reverse all four convictions.

Because similar issues are likely to arise at a subsequent trial, we address the defendant's remaining arguments in the interest of judicial economy.

## II. Double Jeopardy

■ The defendant argues that multiple sentences for convictions of solicitation of aggravated felonious sexual assault, solicitation of kidnapping, and solicitation of violation of the child pornography laws subjected him to multiple punishments for the same offense, in violation of the guarantees against double jeopardy of both the State and Federal Constitutions. We agree.

We first address the defendant's claim of error under the State Constitution, *Ball,* 124 N.H. at 231, 471 A.2d at 350, citing federal law only as an aid to our analysis. *Maya,* 126 N.H. at 594, 493 A.2d at 1143.

The double jeopardy clause of the New Hampshire Constitution protects against "multiple prosecutions and multiple punishments for the same offense." *State v. Fitzgerald*, 137 N.H. 23, 25, 622 A.2d 1245, 1246 (1993). Double jeopardy bars a subsequent prosecution for the same offense. *State v. Constant*, 135 N.H. 254, 255, 605 A.2d 206, 207 (1992). It does not bar simultaneous prosecution for separate charges that constitute the same offense, *see State v. Soucy*, 139 N.H. 349, 353, 653 A.2d 561, 564 (1995), but prevents multiple punishments for convictions on separate charges that constitute the same offense. *Fitzgerald*, 137 N.H. at 25, 622 A.2d at 1246.

"When cumulative punishments are sought for offenses arising out of a single transaction, the focus of the inquiry is whether proof of the elements of the crimes *as charged* will in actuality require a difference in evidence." *State v. Gooden*, 133 N.H. 674, 679, 582 A.2d 607, 610 (1990). The offenses are considered to be the same unless "proof of the elements of the crimes *as charged* will in actuality require a difference in evidence." *State v. Brooks*, 137 N.H. 541, 542, 629 A.2d 1347, 1348 (1993) (quotation omitted). The test is "whether the facts charged in the second indictment would, if true, have sustained the first." *Id.* (quotation omitted).

The relevant part of the indictment for criminal solicitation of aggravated felonious sexual assault charges that the defendant asked Boudrieau

> to engage in sexual penetration with another female under one or all of the following circumstances; while the victim submitted under circumstances involving false imprisonment or kidnapping and/or when the actor, without the prior knowledge or consent of the victim, administers or has knowledge that another person has administered to the victim an intoxicating substance which mentally incapacitates the victim, and/or when the actor coerces the victim to submit by threatening to use physical violence.

The indictment for criminal solicitation of kidnapping charges that the defendant asked Boudrieau

> to aid [the defendant] in knowingly confining a female, with a purpose that [the defendant] and/or Boudrieau then commit the offense of Aggravated Felonious Sexual Assault against her, and/or the offense of Felonious Sexual Assault against her, and/or the offense of Violation of the Child Pornography Laws.

The indictment for criminal solicitation of violation of the child pornography laws charges that the defendant asked Boudrieau

> to act in concert with [the defendant] in the commission of the crime of violating the child pornography law, contrary to RSA 649-A:3 (I)(b), in that the [defendant] did request the said Boudrieau to participate in a visual representation of a child under sixteen engaging in sexual activity.

The defendant does not argue that conviction on the fourth indictment charging felonious sexual assault violates double jeopardy and, therefore, it is not relevant to our double jeopardy analysis.

We first note that the State may not insulate itself against attack on double jeopardy grounds merely by charging the triggering elements of the crime in the alternative. *Cf. State v. Cote,* 126 N.H. 514, 521, 493 A.2d 1170, 1175 (1985). When the State proceeds to trial on such an indictment and the defendant is convicted on a general verdict, we will assume that the jury found the defendant guilty with the triggering event or events that favor finding a double jeopardy violation. *State v. Fuentes,* 888 P.2d 986, 989 (N.M. Ct. App. 1994), *cert. denied,* 889 P.2d 203 (N.M. 1995); *see also Cortez v. State,* 656 A.2d 360, 364-65 (Md. Ct. Spec. App. 1995). This does not prevent the State from charging the triggering elements of a crime in the alternative, *see State v. Allison,* 126 N.H. 111, 114, 489 A.2d 620, 622 (1985); *Stewart v. State* , 601 So. 2d 491, 494 (Ala. Crim. App. 1992), but charging in the alternative puts the defendant in jeopardy for all alternative triggering events charged. *Fuentes,* 888 P.2d at 989; *cf. State v. Inselburg,* 114 N.H. 824, 827, 330 A.2d 457, 459 (1974).

■ The convictions for both solicitation of aggravated felonious sexual assault and solicitation of kidnapping violate double jeopardy. Under the indictments in this case, the defendant could have been convicted for solicitation of aggravated felonious sexual assault for asking Boudrieau to engage in sexual penetration of another female while the victim submitted under circumstances involving false imprisonment or kidnapping. The elements charged in the indictment for solicitation of aggravated felonious sexual assault, if true, would also support a conviction under the indictment for solicitation of kidnapping. *See Brooks,* 137 N.H. at 542, 629 A.2d at 1348.

■ The legislature has defined the crime of aggravated felonious sexual assault under RSA 632-A:2, I, as sexual penetration of another person under any of the twelve statutorily prescribed circumstances. *See* RSA 632-A:2, I. The State charged the defendant with soliciting the crime as described in subparagraph (e), which

proscribes sexual penetration when the victim submits under circumstances involving false imprisonment, kidnapping, or extortion. RSA 632-A:2, I(e). In order to be convicted of aggravated felonious sexual assault under that subparagraph, the State must prove the elements of the triggering offense, whether it be false imprisonment, kidnapping, or extortion. *State v. Bussiere*, 118 N.H. 659, 661, 392 A.2d 151, 153 (1978). Accordingly, we must look to the statutes defining those actions—false imprisonment, kidnapping, and extortion—to discern what particular elements are required to prove aggravated felonious sexual assault when a defendant is charged under RSA 632-A:2, I(e). In the instant case, the defendant could have been convicted for solicitation of aggravated felonious sexual assault based on his asking Boudrieau to sexually penetrate another female under circumstances involving kidnapping. This would have required the State to prove sexual penetration and every element of kidnapping. *See id.* Therefore, solicitation of kidnapping, under this indictment, is a lesser-included offense of solicitation of aggravated felonious sexual assault, and sentences on both convictions violate double jeopardy protections. *E.g., Constant*, 135 N.H. at 255-56, 605 A.2d at 207.

The convictions for both solicitation of kidnapping and solicitation of violation of the child pornography laws also violate double jeopardy. Under the kidnapping statute a defendant can be found guilty if the defendant knowingly confines another under the defendant's control with a purpose to commit an offense against the victim. *See* RSA 633:1. Under the indictments, the defendant could have been convicted for solicitation of kidnapping for asking Boudrieau to knowingly confine a female with a purpose that Boudrieau commit the offense of violation of the child pornography laws. If true, the elements in the indictment for solicitation of kidnapping, as charged, would support a conviction for solicitation of violation of the child pornography laws. *See Brooks*, 137 N.H. at 542, 629 A.2d at 1348. As charged, solicitation of violation of the child pornography laws is a lesser-included offense of solicitation of kidnapping. *See Constant*, 135 N.H. at 255-56, 605 A.2d at 207.

The double jeopardy violation under the State Constitution is a result of the conviction for criminal solicitation of kidnapping. Without this conviction, the convictions on both criminal solicitation of aggravated felonious sexual assault and criminal solicitation of violation of the child pornography laws do not violate the double jeopardy prohibition in the State Constitution. Even though they arise out of the same transaction, the elements of each indictment, as charged, do not require the same evidence; they each have an

element the other is lacking. Therefore, we hold that the conviction for solicitation of kidnapping violates double jeopardy. *See id.*

Because we find that the conviction for criminal solicitation for kidnapping violates the State Constitution, we analyze only the two remaining convictions under the Federal Constitution. *See State v. Maya,* 126 N.H. at 594, 493 A.2d at 1143. Double jeopardy analysis under the Federal Constitution is governed by *Blockburger v. United States,* 284 U.S. 299 (1932). *United States v. Dixon,* 113 S. Ct. 2849, 2862-64 (1993). The test is whether each offense contains an element not contained in the other. *Blockburger,* 284 U.S. at 304. Criminal solicitation of aggravated felonious sexual assault and criminal solicitation of violation of the child pornography laws each have numerous elements not contained in the other; in fact the only element they have in common is the actual asking. *See* RSA 629:2; *compare* RSA 632-A:2 *with* RSA 649-A:3. Therefore, imposing punishment for both offenses does not violate the federal double jeopardy protections.

On remand, the State may elect to try the defendant on all charges or any combination of them, realizing that the defendant may only be punished consistent with this opinion. *See Soucy,* 139 N.H. at 356, 653 A.2d. at 566.

*III. Rule 404(b) Evidence*

Because of recent developments in the law of evidence in the area of New Hampshire Rule of Evidence 404(b), *see State v. Bassett,* 139 N.H. 493, 659 A.2d 891 (1995); *State v. McGlew,* 139 N.H. 505, 658 A.2d 1191 (1995), we defer to the trial court for an initial determination of the admissibility of the defendant's prior bad acts on remand.

*Reversed and remanded.*

All concurred.