Rockingham
No. 2007-403

THE STATE OF NEW HAMPSHIRE

v.

WALTER HUTCHINSON

Argued: January 31, 2008
Opinion Issued: March 7, 2008

*Kelly A. Ayotte*, attorney general (*Elizabeth J. Baker*, assistant attorney general, on the brief and orally), for the State.

*Patrick W. Fleming*, of Portsmouth, on the brief and orally, for the defendant.

GALWAY, J. This is an interlocutory appeal from an order of the Superior Court (*Nadeau*, J.) denying a motion to dismiss the indictments against the defendant, Walter Hutchinson. *See* SUP. CT. R. 8. We affirm and remand.

We take the facts as presented in the interlocutory transfer statement. *State v. MacElman*, 154 N.H. 304, 306 (2006). On October 8, 1991, the defendant was convicted following a jury trial of the attempted murder of Kimberly Earnest. We upheld this conviction on appeal. *See State v. Hutchinson*, 137 N.H. 591, 596 (1993). On November 6, 2005, Kimberly Earnest died. The State alleges that Earnest's death was the result of injuries caused by the defendant, the same injuries alleged in the attempted murder conviction. The State has now indicted the defendant with three alternative counts of murder. The defendant filed a motion to dismiss, arguing that the pending indictments are barred by both the Federal and State Double Jeopardy Clauses. The trial court denied the motion.

The sole issue before us is whether the protection against double jeopardy, as guaranteed by the Fifth Amendment to the United States Constitution and Part I, Article 16 of the New Hampshire Constitution, prevents the State from prosecuting the defendant for murder after previously convicting the defendant for the attempted murder of the same victim. Because this presents a question of constitutional law, our review is *de novo. State v. DeCato*, 156 N.H. 570, 573 (2007). We first address the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 232-33.

The Double Jeopardy Clauses of both the United States Constitution and the New Hampshire Constitution protect an accused from twice being tried and convicted for the same offense. *State v. Hannon*, 151 N.H. 708, 713 (2005); *see* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16. Two offenses will be considered the same unless each requires proof of an element that the other does not. *State v. Constant*, 135 N.H. 254, 255 (1992); *see also United States v. Dixon*, 509 U.S. 688, 712 (1993) (overruling *Grady v. Corbin*, 495 U.S. 508 (1990) "same-conduct" test and relying upon *Blockberger v. United States*, 284 U.S. 299 (1932) "same-elements" test). In New Hampshire, "[w]hen considering the issue of double jeopardy, a subsequent prosecution is permissible only if proof of

the elements of the crimes *as charged* will in actuality require a difference in evidence." *Constant*, 135 N.H. at 256 (quotations and citations omitted).

However, the protection against double jeopardy is not absolute and will yield under certain circumstances. *See Brown v. Ohio*, 432 U.S. 161, 169 n.7 (1977); *Jeffers v. United States*, 432 U.S. 137, 151 (1977) (plurality opinion); *Diaz v. United States*, 223 U.S. 442, 448-49 (1912). In *Diaz*, the United States Supreme Court addressed the question of double jeopardy where a homicide charge followed a defendant's initial conviction for assault and battery after the same victim died from injuries sustained during the assault. *Diaz*, 223 U.S. at 448-49. The *Diaz* Court rejected that defendant's double jeopardy claim, stating:

> The homicide charged against the accused . . . and the assault and battery . . . although identical in some of their elements, were distinct offenses both in law and in fact. . . . At the time of the trial for the [assault and battery] the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense.

*Id.* Thus, the United States Supreme Court acknowledged that double jeopardy was not a bar to a subsequent prosecution for a greater offense where all of the necessary elements of that offense did not exist at the time of the first trial. *See also Garrett v. United States*, 471 U.S. 773, 791 (1985); *Brown*, 432 U.S. at 169 n.7; *Jeffers*, 432 U.S. at 151. Here, the trial court relied upon this exception in denying the defendant's motion to dismiss, noting that Earnest was still alive at the defendant's first trial, making it impossible for the State to prosecute him for murder at that time.

The defendant urges us to reject the *Diaz* rule for several reasons. First, he argues that the development of double jeopardy since *Diaz*, in particular the rejection of the *Grady* "same-conduct" test and reliance upon the *Blockberger* "same-elements" test in *Dixon*, eliminates the need for the *Diaz* rule and compels the conclusion that it is no longer good law. In further support of his position, the defendant asserts that the *Diaz* rule has not been "specifically adopted as good law" by the United States Supreme Court, and argues that cases applying the rule are not binding. We disagree.

Upon our review of *Diaz*, we find no indication, either in its plain text or by inference, that the United States Supreme Court intended the *Diaz* rule to be limited to any one particular double jeopardy test. Although the method of evaluating a double jeopardy claim has evolved through recent times, its essential purpose has remained unchanged. *See Brown*, 432 U.S. at 168 (noting the Court's understanding of double jeopardy unchanged at

least since 1889). We see no reason to conclude that a change in the prevailing test would undermine the *Diaz* Court's articulation of this general exception to double jeopardy protection. We also note that the United States Supreme Court has never restricted the applicability of the *Diaz* rule to a particular double jeopardy standard, although acknowledging the rule on several occasions and in several contexts. Indeed, the defendant has not cited, nor are we able to find, any case in which a court has limited the *Diaz* rule in the manner suggested by the defendant.

To the extent the defendant attempts to lessen the precedential value of *Diaz* and distinguish his case from United States Supreme Court and other pertinent case law, we remain unpersuaded. As we noted above, the United States Supreme Court has acknowledged the *Diaz* rule on several occasions, even characterizing its underlying principle as a "commonly recognized exception" to the Double Jeopardy Clause. *Jeffers*, 432 U.S. at 151. Most notably, in a 1985 decision, the United States Supreme Court applied the *Diaz* rule to permit a subsequent prosecution for a greater criminal offense where the facts comprising the second crime, a continuing criminal enterprise, had not occurred at the time of the first indictment for importation of marijuana. *Garrett*, 471 U.S. at 791-93.

The defendant argues that *Garrett* is distinguishable because, although mentioning the *Diaz* rule, the decision was based primarily upon its determination that the offenses were not the same. While we agree that a substantial portion of the *Garrett* decision is devoted to the Court's "same-offense" analysis, we cannot ignore its alternative analysis under *Diaz*. Indeed, *Garrett* specifically recognizes the limited value of its "same-offense" analysis, noting, "we may assume, for purposes of decision here, that the [importation of marijuana] offense was a lesser included offense, because in our view Garrett's claim of double jeopardy would still not be sustainable" under *Diaz*. *Garrett*, 471 U.S. at 790. Thus, we cannot conclude that the Court's *Diaz* analysis was merely an inconsequential, passing reference without precedential value.

The defendant urges us to adopt the limited application of the *Diaz* rule proffered in Justice O'Connor's concurrence in *Garrett*, 471 U.S. at 795-99 (O'Connor, J., concurring). In her concurrence, Justice O'Connor noted that "successive prosecution on a greater offense may be permitted where justified by the public interest in law enforcement and the absence of prosecutorial overreaching." *Id.* at 796 (O'Connor, J., concurring). However, she suggested that "the defendant's interest in finality would be more compelling where there is no indication of continuing wrongdoing after the first prosecution." *Id.* at 799 (O'Connor, J., concurring). The defendant asserts that the State's legitimate interest in prosecuting the

defendant for his criminal behavior is adequately addressed under Justice O'Connor's rationale because,

> the severity of [his] acts will by necessity be established in the attempted murder trial .... In short, once convicted of attempted murder, the seriousness of [his] culpability is fully established. [His] moral culpability is no greater or less dependent upon whether the victim actually dies as a result.

The defendant thus argues that additional criminal acts should be required in applying the *Diaz* rule. We disagree.

While *Garrett* relied upon that defendant's criminal acts subsequent to the first indictment as a basis for applying *Diaz*, there is no support for the proposition that the Court intended all applications of the *Diaz* rule to be contingent upon such additional acts. Rather, *Garrett* focused upon the incomplete nature of the subsequent crime at the time of the first indictment. *Id.* at 790. Much like the circumstances of this case, the facts supporting Garrett's second crime had simply not occurred at the time of the first indictment.

Furthermore, we are not persuaded that some additional conduct by the defendant is required under *Diaz* based upon the notion of moral culpability. The defendant suggests that, without any additional acts, he can be no more morally culpable for the death of Earnest than has already been established by his attempted murder conviction, and, therefore, the State has no legitimate interest in pursuing this second prosecution. We disagree. The fact that the defendant's underlying criminal acts were completed prior to his initial prosecution does not negate the State's legitimate interest in prosecuting a newly completed, more serious crime—one it could not have pursued at the time of the initial prosecution. The defendant's assertion requires that we ignore the implications of the alleged ultimate result of his acts, the death of Earnest, as an element of the newly pending charges and instead focus only upon the established acts. We will not do so here.

At least four states have applied the *Diaz* rule in the context of an attempted murder and subsequent murder indictment. *People v. Scott*, 939 P.2d 354, 362 (Cal. 1997), *cert. denied*, 523 U.S. 1025 (1998); *Waddy v. State*, 661 So. 2d 351, 352 (Fla. Dist. Ct. App. 1995), *rev. denied*, 667 So. 2d 776 (Fla. 1996); *People v. Carrillo*, 646 N.E.2d 582, 585 (Ill. 1995), *cert. denied*, 515 U.S. 1146 (1995); *State v. Poland*, 232 So. 2d 499, 501-02 (La. 1970), *vacated in part*, 408 U.S. 936 (1972). Numerous other states have applied the *Diaz* rule in other contexts. *See, e.g., State v. Ruesga*, 619 N.W.2d 377, 383 (Iowa 2000); *Commonwealth v. Vanetzian*, 215 N.E.2d 658, 660 (Mass. 1966); *State v. Meadows*, 158 S.E.2d 638, 641-42 (N.C.

1968); *State v. Thomas*, 400 N.E.2d 897, 904 (Ohio 1980), *overruled on other grounds by State v. Crago*, 559 N.E.2d 1353, 1355 (Ohio 1990), *cert. denied*, 499 U.S. 941 (1991); *Commonwealth v. Maroney*, 207 A.2d 814, 816 (Pa. 1965). The defendant has not cited, nor are we able to find, any state that has rejected application of the *Diaz* rule, or limited it to circumstances where additional criminal acts by a defendant have been committed.

Given the continuing recognition and recent application of the *Diaz* rule by the United States Supreme Court, in addition to its unanimous acceptance by those courts which have considered it, we conclude that the *Diaz* rule remains effective in present day double jeopardy jurisprudence and we will not reject it on this basis.

The defendant raises several potential problems with the recognition of the *Diaz* rule. Specifically, he questions the fairness of a subsequent prosecution, and notes the inherent lack of finality associated with any attempted murder conviction and the risk of multiple trials should *Diaz* be applied. In addition, he raises potential evidentiary issues involved in any subsequent trial and the problem of multiple punishments, should he be convicted.

■ "New Hampshire's Double Jeopardy Clause, like its federal counterpart, aims to prevent States from making repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity ...." *State v. McLellan*, 149 N.H. 237, 243 (2003) (quotations omitted). However, it is well-established that the finality guaranteed by the Double Jeopardy Clause is not absolute. *Garrett*, 471 U.S. at 796 (O'Connor, J., concurring). Instead, it "must accommodate the societal interest in prosecuting and convicting those who violate the law." *Id.* (O'Connor, J., concurring). As the Iowa Supreme Court observed with respect to finality and the risk of multiple trials:

> these considerations pale when a new offense matures only after the first trial is concluded. When it is impossible for the state to join all substantive offenses at one trial, the inconvenience to the defendant is clearly outweighed by the public's interest in assuring that the defendant does not fortuitously escape responsibility for his crimes. A second trial, under such circumstances, cannot be characterized as harassment, but must be considered as reasonably serving the public need.

*Ruesga*, 619 N.W.2d at 383 (quotations omitted). Like all other states that have addressed this issue, we conclude, under the circumstances of this case, that the societal interest in prosecuting the defendant for an alleged homicide completed after his initial trial outweighs the defendant's interest in finality, and does not offend the New Hampshire Double Jeopardy Clause.

Furthermore, we note that the interlocutory question transferred from the trial court is limited to whether double jeopardy would bar the pending indictments. The problems raised by the defendant regarding potential evidentiary questions and the potential for multiple punishments are thus beyond the scope of this question, and we therefore decline to address them at this time. *See Everitt v. Gen. Elec. Co.*, 156 N.H. 202, 207-08 (2007) (declining to address arguments raised beyond the scope of the interlocutory question presented).

In sum, we find no compelling reason to deviate from the Federal Constitution. While we have found New Hampshire's Double Jeopardy Clause to provide greater protection than its federal counterpart in certain circumstances, *see, e.g., McLellan*, 149 N.H. at 243, we are not persuaded that we should interpret the State Constitution differently from the Federal Constitution in this context.

Because we have determined that the *Diaz* rule is applicable here, we do not address whether the crime of attempted murder is a lesser-included offense of murder. *See, e.g., Garrett*, 471 U.S. at 790; *Scott*, 939 P.2d at 362 (holding even if attempted murder constitutes same offense as murder, *Diaz* applies); *Carillo*, 646 N.E.2d at 584-85 (resolution of double jeopardy claim did not require lesser-included offense analysis because *Diaz* applies).

*Affirmed and remanded.*

DALIANIS and HICKS, JJ., concurred.