Grafton
No. 2007-533

THE STATE OF NEW HAMPSHIRE

v.

SEAN MCGURK

Argued: June 18, 2008
Opinion Issued: October 16, 2008

*Kelly A. Ayotte,* attorney general (*Karin M. Eckel,* attorney, on the memorandum of law and orally), for the State.

*DesMeules, Olmstead & Ostler,* of Norwich, Vermont (*George H. Ostler* and *Christopher A. Dall* on the brief, and *Mr. Dall* orally), for the defendant.

HICKS, J. The defendant, Sean McGurk, appeals an order of the Superior Court (*Burling,* J.) denying his: (1) motion to vacate his conviction based upon ineffective assistance of counsel; (2) motion challenging his conviction as violating double jeopardy; and (3) motion for new trial and to withdraw guilty plea based upon the discovery of new evidence. We affirm.

The trial court found or the record supports the following. On August 23, 2004, State Trooper Travis Anderson was dispatched to investigate a complaint of a suspicious pick-up truck in the cul-de-sac at the end of Norris Road in Orford. Arriving thirty minutes after the complaint, Anderson did not locate the suspicious pick-up truck but did see a car parked in the cul-de-sac. He approached the car and asked the driver, Diane Molluer, if she had seen a pick-up truck. She replied in the negative. The defendant was seated in the passenger seat.

Anderson observed two partially full bottles of juice on the floor behind the driver's seat. He asked the driver, whom he perceived to be under twenty-one years of age, to step out of the vehicle and provide him with identification. After she exited her vehicle, Anderson questioned her about the pick-up truck and her activities that night. After confirming that she was eighteen years of age, Anderson asked if the bottle contained alcohol. She replied no, but agreed to allow him to smell its contents. Anderson smelled alcohol in the bottle and arrested her for transportation of alcohol. During the arrest, Anderson told the defendant that he could leave; he left the scene on foot.

As Anderson began an inventory search of the car, the defendant returned to the scene, where he interfered with the search by repeatedly

demanding that the driver be released. Anderson advised the defendant to leave the scene before he was arrested.

During the inventory search, Trooper Anderson found what he perceived to be marijuana located in a cellophane wrapping inside a cigarette pack in the center console and also in a plastic Ziploc bag inside a purse in the trunk of the vehicle. After collecting the two bags, he asked the defendant if he wanted to take responsibility for possession of the marijuana. The defendant began yelling and swearing at Anderson. Again, Anderson told the defendant that he would be arrested if he did not leave the scene.

Anderson turned away from the defendant and attempted to finish the inventory search. As soon as he stuck his head into the vehicle, the defendant approached him from behind. Anderson then arrested the defendant for obstructing government administration.

Before placing the defendant in the police cruiser, Anderson removed his cooler, computer and file box from the driver's side rear seat and placed the items on the trunk with the marijuana and alcohol. While checking these items, Anderson realized that he could not locate the plastic bag of marijuana.

At the police station, Anderson first brought the driver into the police station and left the defendant in the cruiser. Anderson returned to the cruiser and then placed the defendant in a holding cell. The defendant swore at Anderson, told him he made a mistake, opened his mouth, stuck out his tongue and exhaled into Anderson's face. Anderson detected an odor of marijuana on the defendant's breath and identified pieces of marijuana on his tongue.

When Anderson returned to his cruiser, he found an empty cellophane wrapper on the back floor of the cruiser and pieces of marijuana on the seat. He also located the Ziploc bag with remnants of marijuana still inside and pieces of marijuana on the back seat.

The defendant was indicted and, on May 2, 2005, pled guilty to two counts of falsifying physical evidence (docket numbers 04-S-741 and 742), *see* RSA 641:6 (2007), and one count of possession of marijuana (docket number 04-S-745), *see* RSA 318-B:2, I (2004). On December 22, 2006, over a year after his guilty plea, the defendant filed several motions challenging his conviction in docket 04-S-742. The trial court denied the motions. This appeal followed.

## I. Ineffective Assistance of Counsel

First, the defendant asserts that the trial court erred in denying his motion to vacate his conviction in docket 04-S-742 (falsification of evidence). He argues that his trial counsel failed to file a motion to suppress

challenging the initial search. He asserts that there was a reasonable probability that such a motion would have been granted because a similar motion was granted in the case against the driver.

The defendant's ineffective assistance of counsel claim is based upon the Sixth Amendment to the Federal Constitution and Part I, Article 15 of the State Constitution. We first address his claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 232-33. "To successfully assert a claim for ineffective assistance of counsel, a defendant must show, first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case." *State v. Sharkey*, 155 N.H. 638, 640-41 (2007). To satisfy the first prong, the defendant must show that counsel made such egregious errors that he or she failed to function as the counsel guaranteed by the State Constitution. *Id.* at 641; *see* N.H. CONST. pt. I, art. 15. We afford broad discretion to trial counsel when determining a trial strategy, and "the defendant must overcome the presumption that counsel's trial strategy was reasonably adopted." *Sharkey*, 155 N.H. at 641.

To satisfy the second prong, the "defendant must demonstrate actual prejudice by showing that there is a reasonable probability that the result of the proceeding would have been different had competent legal representation been provided." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case." *Id.* In a guilty plea context, "the prejudice prong requires the defendant to show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted upon going to trial." *Id.*

The defendant asserts that "[f]ailure to file suppression motions constitutes ineffective assistance when there is merit for suppression." While the "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel," *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986), we accept the proposition, for purposes of this appeal, that under certain circumstances, the failure to file a meritorious suppression motion may satisfy the *Sharkey* test for ineffective assistance of counsel. *Cf. Dickeson v. State*, 843 P.2d 606, 611, 612 (Wyo. 1992) (failure to move to suppress defendant's diary and statements and failure to object to their introduction at trial warranted reversal where such failures "demonstrate[d] deficient performance of trial counsel" and "it is reasonably likely the result of the trial might have been different except for the error of counsel"). The failure to file a suppression motion that would not have

succeeded, however, cannot constitute ineffective assistance of counsel. *See Breese v. Com.*, 612 N.E.2d 1170, 1174 (Mass. 1993).

The trial court concluded that "had [the defendant's trial attorney] filed a motion to suppress based upon the allegedly illegal initial search, the motion likely would have failed." We agree. The defendant asserts that he and the driver were "unlawfully seized by Trooper Anderson when he interrogated them about their actions." Noting that the driver, in the criminal case against her, successfully moved to suppress all evidence from her vehicle, the defendant argues:

> There is a reasonable probability that a similar motion would have been granted in Mr. McGurk's case, and absent the illegally seized marijuana there was an insufficient basis to obtain a conviction against Mr. McGurk for falsifying evidence. That evidence consisted of the illegally obtained marijuana, and if the marijuana was not admissible in a court proceeding then Mr. McGurk did not destroy anything that would have been available in an official proceeding.

■ The defendant's reasoning is flawed, however, because the language of RSA 641:6 does not make admissibility of the evidence at trial an element of the offense of falsifying physical evidence. The statute provides, in pertinent part:

> A person commits a class B felony if, believing that an official proceeding, as defined in RSA 641:1, II, or investigation is pending or about to be instituted, he:
>
> I. Alters, destroys, conceals or removes any thing with a purpose to impair its verity or availability in such proceeding or investigation . . . .

RSA 641:6.

Interpreting the nearly identical language of Utah Code Annotated Section 76-8-510 in a case presenting a situation similar to the one before us, the Court of Appeals of Utah reasoned:

> The plain language of section 76-8-510 proscribes tampering with *anything* which could be used in a future proceeding or investigation. That section's application is not limited to tampering with evidence which is admissible against a defendant at trial. In fact, the very breadth of section 76-8-510 is inimical to such a construction. In the case at bar, [the defendant], by removing and swallowing the bag that the police had taken into custody, clearly

impaired the availability of that evidence for any resulting proceeding or investigation irrespective of its admissibility against him at trial.

*State v. Wagstaff*, 846 P.2d 1311, 1312 (Utah Ct. App.), *cert. denied*, 857 P.2d 948 (Utah 1993).

The court upheld the denial of Wagstaff's motion to suppress under the above reasoning, and because it concluded that "Wagstaff's actions in removing and swallowing the bag seized by the police officers supported a new criminal charge that was distinct and separate from the prior illegal seizure." *Id.* at 1313. The State makes a similar argument here, asserting that "[t]he defendant's own illegal acts were committed after the stop . . . and were unconnected to both the stop and the search of [the driver's] car." The State thus contends that "the defendant's arrest and the evidence against him on these charges cannot possibly be the fruits of the search of [the driver's] car."

 "The 'fruit of the poisonous tree' doctrine requires the exclusion from trial of evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution. If the evidence in question has been obtained only through the exploitation of an antecedent illegality, it must be suppressed." *State v. Cobb*, 143 N.H. 638, 650 (1999) (quotations and citation omitted). Accordingly, "the question to be resolved is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (quotation omitted).

 In determining whether the taint of a Part I, Article 19 violation has been purged, we consider the following factors: "(1) the temporal proximity between the police illegality and the . . . [acquisition of the evidence sought to be suppressed]; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *State v. Hight*, 146 N.H. 746, 750 (2001) (quotations omitted) (determining whether consent to search remained tainted by prior unlawful detention); *see State v. Schrecengost*, 6 P.3d 403, 405 (Idaho Ct. App. 2000) (applying comparable factors to destruction of evidence case).

 We need not discuss the first and third factors because, on the facts of this case, we find the second factor, the presence of intervening circumstances, sufficient to purge the taint. Specifically, the defendant's ingestion of the marijuana "supported a new criminal charge that was distinct and separate from the prior illegal seizure." *Wagstaff*, 846 P.2d at 1313; *cf. State v. Panarello*, 157 N.H. 204, 209 (2008) (adopting new crime

exception to exclusionary rule where defendant commits a new crime against police officers in response to an illegal search or seizure).

We concur with the reasoning of the Court of Appeals of Idaho in *Schrecengost*:

> Schrecengost's actions in destroying the suspected contraband were not committed during an active, illegal police search for evidence and were not committed while the evidence was still in her possession. The evidence in this case had already been reduced to the sole custody of the police at the time of Schrecengost's conduct. Schrecengost's actions were therefore her own and were independent of any police coercion caused by the illegal arrest and search for evidence. Accordingly, the intervening circumstance factor strongly militates against suppression under the factual pattern of this case.

*Schrecengost*, 6 P.3d at 406; *see Brown v. State*, 575 So. 2d 1360, 1361 (Fla. Dist. Ct. App. 1991) ("Once the officer had taken the evidence into his custody, the defendant was not entitled to remove it—whether or not the underlying seizure was illegal.").

We find nothing in the facts before us that would override the force of this intervening circumstance in the *Hight* analysis. Accordingly, we conclude, under our State constitutional analysis, that the taint of any police illegality was purged when the defendant "independently and of his own volition," *Brown v. State*, 575 So. 2d at 1361, ingested the marijuana. The State Constitution provides at least as much protection as the Federal Constitution under these circumstances. *See Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (setting forth factors cited in *Hight*); *Hight*, 146 N.H. at 750 (finding the *Brown v. Illinois* factors instructive for purposes of our State constitutional analysis). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

■ Given that any taint of police misconduct was purged, a suppression motion would likely have been unsuccessful. Accordingly, we conclude, under our State constitutional analysis, that counsel's failure to file such a motion did not constitute ineffective assistance of counsel. *See Sharkey*, 155 N.H. at 640-41; *see also Breese*, 612 N.E.2d at 1174. Again, the State Constitution provides at least as much protection as the Federal Constitution under these circumstances, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting forth federal standard for ineffective assistance of counsel); *Sharkey*, 155 N.H. at 640-41, and we therefore reach the same result under the Federal Constitution as we do under the State Constitution.

*II. Double Jeopardy*

Next, the defendant argues that his conviction and sentence in docket 04-S-742 (falsifying physical evidence) violate the Double Jeopardy Clauses of the United States and New Hampshire Constitutions in light of his conviction and sentence in docket 04-S-745 (possession of marijuana). We disagree.

■■ Because the issue of double jeopardy presents a question of constitutional law, our review is *de novo*. *State v. Hutchinson*, 156 N.H. 790, 791 (2008). The Double Jeopardy Clauses of both the United States Constitution and the New Hampshire Constitution protect against multiple prosecutions and multiple punishments for the same offense. *Hutchinson*, 156 N.H. at 791; *see* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16. We first address the claim under the State Constitution, *Ball*, 124 N.H. at 231, and cite federal opinions for guidance only, *id.* at 232-33. "Two offenses will be considered the same [for double jeopardy purposes] unless each requires proof of an element that the other does not." *Hutchinson*, 156 N.H. at 791. When considering the issue of double jeopardy, our focus under the State Constitution is upon whether proof of the elements of the crimes "as charged" will in actuality require a difference in evidence. *State v. Lucius*, 140 N.H. 60, 65 (1995). "The test is whether the facts charged in the second indictment would, if true, have sustained the first." *Id.* (quotation omitted).

■ The trial court ruled that each indictment required the State to prove a fact that was not necessary to the other. We agree. The first offense, possession of a controlled substance, requires proof that the defendant knowingly possessed a controlled drug, except as authorized by RSA chapter 318-B. *See* RSA 318-B:2, I. The second offense, falsifying physical evidence, requires the State to prove that the defendant, believing that there was a proceeding pending, knowingly altered, destroyed, concealed or removed anything, and did so with a purpose to impair its availability. *See* RSA 641:6, I.

The defendant asserts that ingesting the marijuana was the sole act of possession committed and therefore was an element of both the possession of a controlled substance and falsification of physical evidence. The trial court ruled that the falsifying physical evidence charge did not require the State to prove that the object destroyed was a controlled drug, but only that it be "any thing" and destroyed with a purpose to impair its availability. *Id.* Accordingly, the trial court properly ruled that a difference in evidence exists. Thus, even though each offense arises out of the same act of

ingesting marijuana, they constitute separate offenses and do not violate the Double Jeopardy Clause of the New Hampshire Constitution.

The State Constitution provides at least as much protection as the Federal Constitution under these circumstances. *See United States v. Dixon*, 509 U.S. 688, 696-704 (1993) (overruling "same conduct" test and retaining "same elements" test in federal double jeopardy analysis). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*III. New Trial/Withdraw Guilty Plea*

The defendant asserts that the trial court erred in denying his motion for a new trial based upon the discovery of new evidence. He contends that the suppression order in the case involving the driver constitutes new evidence because the district court granted the driver's motion to suppress all the evidence, including the marijuana, after the defendant pled guilty. Moreover, he argues that the suppression "changed the status" of the evidence justifying a motion for a new trial. We disagree.

As an initial matter, the trial court concluded that the defendant's motion was properly a motion to withdraw a guilty plea, not a motion for a new trial. Because the defendant pled guilty and never went to trial, the proper analysis is not the new trial standard, but the standard for withdrawing a guilty plea. As a result, we decline to address the defendant's argument for a new trial.

■■■ When a defendant moves to withdraw a guilty plea, he has the burden to prove that his earlier plea was made involuntarily and that withdrawal of the plea must be allowed to correct a manifest injustice. *Sharkey*, 155 N.H. at 640. It is within the trial court's discretion to allow the withdrawal of a guilty plea. *Id.* We will not set aside the trial court's decision unless it committed an unsustainable exercise of discretion. *Id.* at 640-41. To show that the trial court's decision was unsustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *State v. Lambert*, 147 N.H. 295, 296 (2001).

■■■ Here, the defendant failed to meet his burden of proof to withdraw his guilty plea. At the plea and sentencing hearing, he stated that he was pleading guilty because he was in fact guilty and for no other reason. He also admitted that he did not feel threatened by anyone to enter a guilty plea and his decision to enter a plea was free and voluntary. In addition, he gave up his right to have the court exclude at trial any evidence that was improperly obtained. The record reveals nothing contrary to a conclusion that the defendant knowingly, intelligently and voluntarily pled guilty, and

the defendant fails to argue otherwise. Further, as stated previously, the successful suppression order in the driver's case did not render the marijuana unavailable as evidence in the defendant's case. Consequently, there was no manifest injustice to correct in this case.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.