Strafford
No. 90-306

THE STATE OF NEW HAMPSHIRE

v.

RENEE PLANTE

August 2, 1991

*John P. Arnold,* attorney general (*Brian R. Graf,* attorney, on the brief and orally), for the State.

*Bamford and Dedopoulos,* of Durham (*Stuart Dedopoulos* on the brief and orally), for the defendant.

BROCK, C.J.   The defendant, Renee Plante, was convicted of possession of a controlled drug, marijuana, RSA 318-B:2 (Supp. 1990), and appeals from an order of the Superior Court (*Nadeau,* J.) denying her motion to suppress evidence obtained during a warrantless security search. On appeal, she contends that the trial court erred in denying her motion, alleging that the evidence was the product of a search in violation of the State and Federal Constitutions. For the reasons that follow, we affirm.

The following facts are taken from an agreed statement of facts. On May 5, 1989, the defendant and her husband went to the Strafford County Justice and Administration Building, on the second floor of which the Strafford County Superior Court is located. Prominently displayed signs in the lobby and elevator of the building state: "All persons entering this court facility are deemed to have consented to security screening of their person and property for weapons." Persons who wish to enter the secured area where the courtroom is located must submit to a search by a magnetometer, which is a walk-through device for detecting metallic objects, and to an inspection of handbags and briefcases by the bailiff. When the defendant exited the elevator and discovered the security station, she showed signs of nervousness. She relinquished her handbag to the bailiff upon his request, and indicated that his request frightened her. The bailiff replied that the search was merely a check for weapons, and that the defendant had no reason to be frightened.

Ordinarily, the bailiff, prior to commencing a search, informs visitors that they may leave the building rather than submit to the search, and that once he begins searching, he does not stop until he

has completed the search. Neither the bailiff nor the defendant recalls whether the bailiff so informed the defendant. Upon searching the defendant's handbag, the bailiff discovered a packet of cigarette rolling papers and a 3½-inch by 4½-inch metal container bearing the label of "Sucrets" throat lozenges. He suspected that the Sucrets box contained either illegal drugs or dangerous weapons. Before the bailiff could open the container, however, the defendant seized his hand and urged him several times not to open the container. After ordering the defendant to let go of his hand, the bailiff opened the container and discovered seven burned and one unburned marijuana cigarettes.

The defendant was arrested and charged with possession of a controlled drug. RSA 318-B:2 (Supp. 1990). The Dover District Court convicted the defendant and imposed a ten-day suspended sentence and a fine of $150. The defendant appealed the conviction to the superior court, where she filed a motion to suppress the evidence seized from the Sucrets container asserting, *inter alia*, that the search violated the warrant requirement contained in part I, article 19 of the State Constitution and the fourth amendment to the United States Constitution. The motion was denied, and this appeal followed.

On appeal, the defendant admits that she voluntarily submitted to a search of her handbag for weapons. However, she contends that the search of the Sucrets container in the handbag was an unreasonable search not falling within the administrative search exception, because it is not plausible that a weapon or explosive device could be concealed in a container of such small dimensions. She asserts that the bailiff did not attempt to open the Sucrets container until after he discovered the rolling papers, which were of a type suitable for making marijuana cigarettes. She contends that his discovery caused him to open the container because he suspected that marijuana was likely to be found near where rolling papers were found, thereby making the search part of an unlawful criminal investigation for contraband rather than an administrative search for weapons. She also argues that she withdrew her consent by expressly objecting to the search of the container, and asserts that the bailiff should have informed her that she was free to leave and avoid the search, and that once he began the search he would not stop until it was completed. The State, on the other hand, argues that the defendant was put on notice of the search and voluntarily submitted to it by choosing to enter the courthouse and by relinquishing her handbag to the bailiff. The State also contends that the bailiff's search was

minimally intrusive and conducted for the lawful purpose of detecting weapons.

The issue we must decide in this appeal is whether the search of the Sucrets container was a reasonable search falling within the administrative search exception, and whether the defendant had the right to terminate the search once she relinquished her handbag to the bailiff. We first look to the protection afforded under the New Hampshire Constitution, and only look to the Federal Constitution to the extent that it affords greater protection. *State v. Ball*, 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983). We use federal case law only as an aid to our analysis. *See Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983).

██ "A warrantless search is *per se* unreasonable and invalid, unless it comes within one of a few recognized exceptions." *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980) (citing *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)); *see* U.S. CONST. amend. IV; N.H. CONST. pt. I, art. 19. In this State we have explicitly adopted the administrative search exception. *State v. Turmelle*, 132 N.H. 148, 152, 562 A.2d 196, 199 (1989).

The purpose of an administrative courthouse search is to deter individuals from bringing dangerous weapons into courthouses. There is a compelling safety concern in courthouses due to the recent and increasing acts of violence directed at such institutions. If individuals were allowed to impede a search after it has commenced, they could be provided with a safe opportunity to avoid weapon detection. Such an opportunity would encourage persistent individuals to repeat their attempts to gain entry with weapons. *See United States v. Pulido-Baquerizo*, 800 F.2d 899, 902 (9th Cir. 1986). These searches are conducted on a regular basis of all individuals wishing to enter and do not constitute discretionary acts by government officials. *See New York v. Burger*, 482 U.S. 691, 711 (1987). The search is narrowly tailored to discovery of dangerous weapons and explosives, and the intrusion is limited to a walk-through metal screening device and a search of handbags and other parcels.

Dangerous weapons and explosives can be concealed in small containers no larger than the Sucrets container at issue in this case. Although the defendant argues that the bailiff had no reason to believe that the Sucrets box contained a weapon, the defendant signed an agreed statement of facts which stated that the bailiff has found weapons in small containers, including Sucrets boxes, during other

searches, and is familiar with several deadly weapons that could be concealed in a Sucrets box. Moreover, the defendant voluntarily submitted to the search of her handbag when told by the bailiff that the search was a security check for weapons.

■ Upon reviewing the evidence in the record before us, we conclude that there was sufficient evidence to support the trial court's finding that the bailiff's search of the metal container was a reasonable search under part I, article 19 of the New Hampshire Constitution, within the context of an administrative search for weapons, and that once the defendant relinquished her handbag to the bailiff she did not retain the right to terminate the search once it commenced.

Because the Federal Constitution affords the defendant no greater protection than our own, we need not make an independent federal analysis. *See State v. Ball*, 124 N.H. at 231–32, 471 A.2d at 350–51; *cf. United States v. Herzbrun* 723 F.2d 773, 776 (11th Cir. 1984) (no fourth amendment violation where individuals are not allowed to revoke consent to search at airport security checkpoint). Accordingly, we hold that the search was valid under the administrative search exception to the warrant requirement and therefore affirm the trial court's ruling.

*Affirmed.*

BATCHELDER, J., dissented; the others concurred.

BATCHELDER, J., dissenting: This case, although presented to the trial court on an agreed statement of facts, is devoid of any reference to the State's having satisfied its burden of showing that the defendant was advised of her right to leave the courthouse without submitting to the administrative search. *See Florida v. Bostick*, 111 S. Ct. 2382 (1991) (police specifically advised defendant that he had right to refuse consent). I would reverse on that ground alone and would not reach the issue of the scope of the search.