Belknap
No. 93-604

THE STATE OF NEW HAMPSHIRE

v.

JACOB DRAKE

June 27, 1995

*Jeffrey R. Howard,* attorney general (*John A. Curran,* assistant attorney general, on the brief and orally), for the State.

*McLaughlin, Hemeon & Lahey, P.A.,* of Laconia (*Robert L. Hemeon* and *Janice L. McLaughlin* on the brief, and *Ms. McLaughlin* orally), for the defendant.

THAYER, J. The defendant, Jacob Drake, appeals his convictions in Superior Court (*McHugh,* J.) on two counts of possession of a controlled drug with intent to sell, RSA 318-B:26 (1984 & Supp. 1993) (amended 1994), and one count of felonious use of a firearm, RSA 650-A:1 (1986). He contends that the superior court erred in denying his motion to suppress. We affirm.

On January 11, 1993, Kirkland Ross, the administrative assistant to the principal of Gilford High School, received an anonymous phone call. The caller said that the defendant, a senior, "would be carrying a substantial amount of drugs including LSD with him in school that day." Teachers had previously expressed concern to Ross that the defendant was likely using, and possibly distributing, drugs. Approximately a year earlier, a teacher had reported her belief that the defendant had been involved in a drug transaction at school. In addition, Ross' mother-in-law had told him that Drake had recently been arrested for drug possession in Massachusetts.

Ross notified the principal of the anonymous phone call, and the principal requested that the defendant, who was arriving late for school, come into his office. The defendant was told to empty his pockets, which contained a wallet, a package of cigarettes, a pipe, and some rolling papers. The principal asked him to open his knapsack after seeing the pipe and what appeared to be a small amount of marijuana on the rolling paper package. The knapsack contained several bags of marijuana. The principal called the Gilford Police Department, and Officer Markland took the defendant into custody. In addition to the marijuana, Markland found an unloaded semi-automatic pistol in the

knapsack. A later search revealed two baggies in the defendant's sock containing 121 "hits" of LSD.

The defendant was indicted on two counts of possession of a controlled drug with intent to sell, and one count of felonious use of a firearm. His motion to suppress all evidence seized as a result of the search by school authorities on January 11 was denied by the superior court. The defendant waived his right to a trial and was found guilty on all three counts.

The defendant argues that the trial court erred in denying his motion to suppress under both part I, article 19 of the New Hampshire Constitution and the fourth amendment of the United States Constitution. "We address the defendant's State constitutional claim first, citing federal law only to aid our analysis." *State v. Wong*, 138 N.H. 56, 60, 635 A.2d 470, 473 (1993) (citation omitted).

Public school officials are not exempt from constitutional prohibitions against unreasonable searches and seizures. Part I, article 19 provides: "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." "In the absence of a lawful warrant, all searches are *per se* unreasonable unless conducted within the narrow confines of a judicially crafted exception." *State v. Murray*, 135 N.H. 369, 374, 605 A.2d 676, 679 (1992). Because the issue of searches by public school officials is one of first impression under part I, article 19, we find the decisions of other state and federal courts instructive. *Wong*, 138 N.H. at 61, 635 A.2d at 473.

Certain constitutional rights apply equally in the public school setting as elsewhere. *See Duffley v. N.H. Interschol. Ath. Assoc., Inc.*, 122 N.H. 484, 485–86, 446 A.2d 462, 463 (1982). These include rights under part I, article 19 of the New Hampshire Constitution. Public school students have legitimate privacy interests in a variety of personal items they bring to school. *See New Jersey v. T.L.O.*, 469 U.S. 325, 339 (1985). These privacy interests are not waived when the student merely passes through the schoolhouse door. *See id.*

But while students bring certain rights with them when they enter a public school, additional rights attach upon that entry. In particular, students are entitled to a safe and healthy educational environment. This is worthy of particular notice because school attendance is mandated by law. *See* RSA 193:1 (Supp. 1994).

The right to a safe and healthy school environment necessarily vests certain responsibilities in those administering public education. Among these responsibilities is a duty to protect school children from antisocial behavior on the part of irresponsible classmates. *See In re State in Interest of G.C.*, 296 A.2d 102, 106 (N.J. Juv. & Dom. Rel. Ct. 1972). This duty requires administrators to take preventive and

disciplinary measures that must be swift and informal to be effective. Swiftness and informality are especially important in dealing with problems such as weapons that may pose the threat of immediate physical harm to other students, *see Com. v. Carey,* 554 N.E.2d 1199, 1203 n.4 (Mass. 1990), or drugs that could easily be destroyed or otherwise disposed of should a search be delayed, *see State v. McKinnon,* 558 P.2d 781, 785 (Wash. 1977). Flexibility is critical because of the importance of protecting children from dangers such as drugs and weapons when they are in the charge of public school officials. *Cf. State v. Parker,* 127 N.H. 525, 530, 503 A.2d 809, 812 (1985) (State has strong interest in the protection of children).

"The public school setting is one in which governmental officials are directly in charge of children and their environs, including where they study, eat and play." *In re William G.,* 709 P.2d 1287, 1295 (Cal. 1985). They must therefore be allowed flexibility and discretion, especially when dealing with the drug problems that many public schools now face. *See T.L.O.,* 469 U.S. at 339–40. In exercising this discretion, school officials may employ the knowledge, expertise, and experience they have gained through efforts to deal with problems such as student drug use. *See State ex rel. Galford v. Mark Anthony B.,* 433 S.E.2d 41, 47 (W. Va. 1993).

The need for swift and informal procedures necessary for educators to assure a safe and healthy educational environment must be balanced against a student's legitimate privacy interest in non-contraband items. Within this context we determine the appropriate standard for permissible searches of students by public school officials under the New Hampshire Constitution. We note that the warrant requirement is particularly unsuited for public school officials in light of the need for swift and informal procedures to maintain discipline and order. *See T.L.O.,* 469 U.S. at 340. The standard we set forth is therefore applicable to warrantless searches.

Ordinarily, a search must be based on probable cause, even when that search may be validly conducted without a warrant. *See, e.g., State v. Murray,* 134 N.H. 613, 615, 598 A.2d 206, 208 (1991). We have held in other contexts, however, that a warrantless search can be reasonable under part I, article 19 even when not based on probable cause. *See State v. Plante,* 134 N.H. 585, 588, 594 A.2d 165, 167, *cert. denied,* 502 U.S. 984 (1991). "Any departure from the probable-cause requirement . . . rests on a balancing of the nature and quality of the intrusion on the individual's [privacy] interests against the importance of the governmental interests alleged to justify the intrusion." *State v. Pellicci,* 133 N.H. 523, 529, 580 A.2d 710, 714 (1990) (quotation and ellipses omitted). The defendant does not argue that either a warrant or probable cause is necessary to justify public

school searches. Instead, he urges us to adopt a standard of reasonable suspicion equivalent to that necessary for a warrantless investigatory stop by law enforcement. We decline to do so.

Public school officials are not law enforcement officers. Law enforcement officers are responsible for the investigation of criminal matters and maintenance of general public order. Public school administrators, on the other hand, are charged with fostering a safe and healthy educational environment that facilitates learning and promotes responsible citizenship. The special charge of school officials mandates that they be afforded greater flexibility than law enforcement officials when searching for contraband.

It would make little sense to require that public school officials be as intimately familiar as law enforcement officials with the intricacies of constitutional criminal procedure. The appropriate standard should take into account not only the everyday responsibilities of public school administration, but also the unique relationship between school officials and their students. Public school officials have a greater responsibility for their students than law enforcement officials have for the general public. *See, e.g., In re William G.,* 709 P.2d at 1295. There are, however, constitutional limitations on the permissible intrusions into the legitimate privacy interests of public school students. Because it carefully accounts for the unique concerns presented by the public school environment, we will employ the fourth amendment standard in our State constitutional analysis.

■■ The United States Supreme Court enunciated the fourth amendment standard in *New Jersey v. T.L.O.,* 469 U.S. 325. The Court held that a warrantless search of a student by a public school official is constitutional if it is reasonable under all of the circumstances. *See T.L.O.,* 469 U.S. at 341. It must be justified at its inception and reasonably related in scope to the circumstances giving rise to the search. *See id.* Prior to beginning a search, the school official must have reasonable grounds to believe that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. *Id.* at 341–42. Additionally, the action taken must be "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342.

We hold that the standard for searches by public school officials under the New Hampshire Constitution is commensurate with that set forth in *T.L.O.* We therefore conclude that the defendant has no greater rights under the Federal Constitution, and we do not separately analyze his federal constitutional claim. *See State v. LaFountain,* 138 N.H. 225, 227, 636 A.2d 1028, 1029 (1994); *T.L.O.,* 469 U.S. at 341.

 In this case, the search was reasonable. The telephone call informing Ross that the defendant would be carrying drugs to school that day, taken in light of existing suspicions of the defendant's drug involvement, was more than enough to justify the inception of the search. The defendant argues that none of the facts relied on by the school officials, when viewed in isolation, would have justified the initiation of a search. We need not concern ourselves with this argument, however, because reasonableness under all the circumstances is a totality test, and the initiation of this search was justified by the facts viewed in the aggregate. *See In Interest of S.F.,* 607 A.2d 793, 795–96 (Pa. Super. 1992). Furthermore, reasonableness must take into account the threat posed to the student body by the suspected illegality. In this case, school officials feared that the defendant was bringing a substantial amount of drugs to school, possibly to distribute to other students. This behavior would pose a significant danger to the student body that school officials have a legitimate interest in preventing. *See, e.g., People In Interest of P.E.A.,* 754 P.2d 382, 389 (Colo. 1988). This danger justified asking the defendant to empty his pockets.

Having been reasonably initiated, the search then revealed further evidence of probable drug possession in the form of a pipe and what appeared to be a small amount of marijuana on the rolling paper package. At that point, expanding the scope of the search to include the knapsack was reasonable. *Cf. T.L.O.,* 469 U.S. at 347. Because the search was reasonable under all the circumstances, the defendant's motion to suppress was properly denied.

*Affirmed.*

All concurred.