Carroll
No. 97-017

THE STATE OF NEW HAMPSHIRE

v.

FREDERICK L. TINKHAM, JR.

October 5, 1998

*Philip T. McLaughlin,* attorney general (*Mark S. Zuckerman,* senior assistant attorney general, on the brief and orally), for the State.

*Kenna, Johnston & Sharkey, P.A.,* of Manchester (*Bruce E. Kenna* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Frederick L. Tinkham, Jr., appeals his conviction in Superior Court (*Mohl,* J.) of unlawful sale of a

controlled drug. *See* RSA 318-B:2, I (1995). The defendant argues that the Superior Court (*Fauver,* J.) erred by denying his motion to suppress. We affirm.

On September 15, 1995, two students at Kingswood Regional High School reported to the principal, Deborah Brooks, that they saw a plastic bag containing marijuana in a book bag belonging to a fellow student. Brooks approached the student and discovered marijuana upon searching her bag. The student eventually told Brooks that she had purchased the drugs from the defendant during the previous day in the student parking lot for a concert she was attending with other students later that evening. Brooks brought the bag of marijuana to the Wolfeboro Police Department and told the police that she was planning to question the defendant.

Brooks returned to school and brought the defendant into her office. After the assistant principal joined them, Brooks explained to the defendant that she had reason to believe that he was carrying an illegal substance and asked him to empty his book bag. The defendant complied. While searching the defendant's bag, Brooks discovered a small wooden cylindrical object with a peculiar odor. She seized the item and told the defendant that she would give it to the police. Brooks also asked the defendant to empty his pockets and show her the contents of his socks and shoes, but she did not find any illegal substances.

Following the search, Brooks explained to the defendant that a student confessed to buying marijuana from him on the previous day. The defendant admitted giving a bag of marijuana to someone in exchange for money, but claimed that he received the marijuana from someone else whose name he would not reveal. Brooks then asked him to write a statement on a "student-referral form," a form used when disciplinary action is taken against a student, which provides space for the school administrator and the student to write their versions of the events at issue. Although there is some dispute as to the level of the defendant's cooperation in filling out the form, he eventually wrote, "Someone told me to give a bag [of] pot to someone for someone else and exchanged money and then left." Brooks informed the defendant that he would be suspended for five days and that further action would likely be taken. Brooks then contacted the police and told them about the item she seized from the defendant's book bag as well as the details of her conversation with the defendant.

In November 1995, the defendant was charged with selling marijuana to another student on school property. *See* RSA 318-B:2, I. Prior to trial, the defendant moved to suppress the wooden

container seized from his book bag and the student referral form containing his statement. The superior court denied the motion, and the defendant was subsequently convicted after a jury trial. The defendant appeals.

On appeal, the defendant contends that the trial court should have granted his motion to suppress because Brooks' search of the defendant violated the State and Federal Constitutions, and therefore the defendant's statement and the wooden container were the "fruit of the poisonous tree." *See* N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. The defendant also contends that his statement should have been suppressed because Brooks failed to provide the defendant with *Miranda* warnings before questioning him. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. V; *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). We address the defendant's State constitutional claim first and cite to federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 351 (1983). Because the Federal Constitution provides no greater protection in this area, *see Miranda*, 384 U.S. at 444-45; *State v. McLellan*, 139 N.H. 132, 136-37, 649 A.2d 843, 845 (1994) (comparing Part I, Article 15 with the Fifth Amendment); *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985); *State v. Drake*, 139 N.H. 662, 666, 662 A.2d 265, 268 (1995) (comparing Part I, Article 19 with the Fourth Amendment), we need not undertake a separate federal constitutional analysis. "We will not overturn the trial court's finding on a motion to suppress unless it is contrary to the weight of the evidence." *State v. Rezk*, 135 N.H. 599, 601, 609 A.2d 391, 393 (1992).

■ We first address the defendant's argument that his statement and the wooden container were "fruit of the poisonous tree." The "fruit of the poisonous tree" doctrine requires the exclusion from trial of evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution. *See State v. Canelo*, 139 N.H. 376, 385-86, 653 A.2d 1097, 1104 (1995). Even assuming that the search induced the defendant's statement, we conclude that the trial court properly found that the initial search did not violate Part I, Article 19.

■ Public school officials are not exempt from the constitutional prohibitions against unreasonable searches and seizures. *Drake*, 139 N.H. at 664, 662 A.2d at 266. They are, however, "afforded greater flexibility than law enforcement officials when searching for contraband." *Id.* at 666, 662 A.2d at 267.

[A] warrantless search of a student by a public school official is constitutional if it is reasonable under all of the

circumstances. It must be justified at its inception and reasonably related in scope to the circumstances giving rise to the search. Prior to beginning a search, the school official must have reasonable grounds to believe that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Additionally, the action taken must be reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 666, 662 A.2d at 267-68 (citations and quotation omitted).

Brooks' search of the defendant was reasonable under the circumstances of this case. The student's statement that she had purchased drugs from the defendant during the previous day justified Brooks' search of the defendant in order to preempt future drug sales and confiscate any drugs in his possession. *See State v. Biancamano,* 666 A.2d 199, 202 (N.J. Super. Ct. App. Div. 1995) (upholding vice-principal's search of student where another student informed vice-principal that student was distributing drugs), *cert. denied,* 673 A.2d 275 (N.J. 1996). Furthermore, because the student had purchased the drugs for a concert she was attending with other students later that evening, Brooks was concerned that the defendant would possibly sell drugs to those students as well. *See Com. v. Snyder,* 597 N.E.2d 1363, 1368 (Mass. 1992) (reasoning that prompt action was needed to reduce chance of further marijuana sales by defendant); *Drake,* 139 N.H. at 667, 662 A.2d at 268 (reasoning that school officials have legitimate interest in preventing defendant from distributing drugs to other students). These facts justified Brooks' search of the defendant.

■ In addition, we disagree with the defendant's contention that the scope of the search was unreasonable. Searching the defendant's book bag, and asking him to remove his shoes and socks and empty his pockets, were logical and not excessively intrusive given that these are obvious places where one might hide contraband. *Cf. Drake,* 139 N.H. at 667, 662 A.2d at 268 (possibility that defendant would distribute drugs to other students justified asking defendant to empty his pockets).

■ The defendant next argues that Brooks' failure to advise the defendant of his right to remain silent and his right to counsel prior to questioning violated Part I, Article 15 of the New Hampshire Constitution. *Miranda* warnings advise a defendant of his constitu-

tional rights, *see Miranda*, 384 U.S. at 444-45; *State v. Nash*, 119 N.H. 728, 731, 407 A.2d 365, 367 (1979), and must be administered when an individual is subject to a custodial interrogation by law enforcement agents. *See Miranda*, 384 U.S. at 444; *State v. Carroll*, 138 N.H. 687, 696, 645 A.2d 82, 87 (1994).

Although school principals are "responsible for administration and discipline within the school," *Navajo Co. Juv. Act. No. JV91000058*, 901 P.2d 1247, 1249 (Ariz. Ct. App. 1995), and "must regularly conduct inquiries concerning both violations of school rules and violations of law," *Biancamano*, 666 A.2d at 203, they are not law enforcement agents. *See Drake*, 139 N.H. at 666, 662 A.2d at 267. They are "neither trained nor equipped to conduct police investigations," *Biancamano*, 666 A.2d at 203, and, unlike law enforcement agents, enforcing the law is not their primary mission. *Navajo Co. Juv. Act. No. JV91000058*, 901 P.2d at 1249. "Law enforcement officers are responsible for the investigation of criminal matters and maintenance of general public order," while school officials, in comparison, "are charged with fostering a safe and healthy educational environment that facilitates learning and promotes responsible citizenship." *Drake*, 139 N.H. at 666, 662 A.2d at 267. Our conclusion that Brooks is not a law enforcement officer is in accordance with the reasoning of the many jurisdictions that have refused to require public school officials to administer *Miranda* warnings. *See, e.g., Navajo Co. Juv. Act. No. JV91000058*, 901 P.2d at 1249; *State v. Barrett*, 683 So. 2d 331, 339 (La. Ct. App. 1996); *Snyder*, 597 N.E.2d at 1369; *Biancamano*, 666 A.2d at 203.

We next address whether Brooks acted as an agent of the police, because a school official acting as an instrument or agent of the police may be required to administer *Miranda* warnings. *See Navajo Co. Juv. Act. No. JV91000058*, 901 P.2d at 1249; *Snyder*, 597 N.E.2d at 1369. "[T]he existence of an agency relationship under Part I, Article 15 of the State Constitution requires proof of some affirmative action by a police officer or other governmental official that preceded the interrogation and can reasonably be seen to have induced the third party to conduct the interrogation." *State v. Gosselin*, 131 N.H. 243, 248, 552 A.2d 974, 976 (1988) (quotation and ellipsis omitted). Here, there was no affirmative act by any police officer inducing Brooks to question the defendant. In fact, it was Brooks who approached the Wolfeboro police and told them of her conversation with the student who implicated the defendant, and that she planned on questioning the defendant when she returned to school. The record does not reflect that the Wolfeboro police made any suggestions to Brooks or directed her course of action. *See State*

*v. Bruneau*, 131 N.H. 104, 110, 552 A.2d 585, 589 (1988) (noting that third party was not police agent because he initiated contact with police, and police took no affirmative steps to enlist his help). Moreover, "[t]he fact that the school administrators had every intention of turning the marihuana over to the police does not make them agents or instrumentalities of the police in questioning [the defendant]." *Snyder*, 597 N.E.2d at 1369.

■ We therefore conclude that because Brooks was neither a law enforcement officer nor an agent of the police, *Miranda* warnings were not required. *See, e.g., Navajo Co. Juv. Act. No. JV91000058*, 901 P.2d at 1249; *Snyder*, 597 N.E.2d at 1369. The need to question students about possible misconduct is necessary to maintain a safe school environment and demands that school officials receive some latitude in their questioning. *See T.L.O.*, 469 U.S. at 339-40; *Biancamano*, 666 A.2d at 203; *cf. Drake*, 139 N.H. at 664-65, 662 A.2d at 266-67. Thus, the trial court properly denied the defendant's motion to suppress.

*Affirmed.*

THAYER, J., did not sit; the others concurred.