Franklin District Court
No. 2006-406

IN RE JUVENILE 2006-406

Argued: June 14, 2007
Opinion Issued: September 25, 2007

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The juvenile appeals an order of the Franklin District Court (*Gordon*, J.) denying his motion to suppress. We affirm.

In reliance upon a record that all agree is sparse, the trial court found the following facts. On October 12, 2005, a teacher in the juvenile's high school informed the assistant principal that a particular student—the juvenile in this case—had a "large pot pipe" in his possession. The teacher had heard about this situation "through other students." The assistant principal took no immediate action because the juvenile had left for the day by the time he, the assistant principal, was approached by the teacher. The following day, the teacher again heard from students that the juvenile had a pot pipe, and, as he had done previously, he reported that information to the assistant principal. The teacher, however, did not divulge the names of the students from whom he heard about the pipe. Based upon the two reports, the assistant principal searched the juvenile's locker. In it, he found a backpack containing a pot pipe which smelled of burnt marijuana, vegetative matter he believed to be marijuana, a lighter and thirty-two dollars in cash. The assistant principal's discovery led to a delinquency petition being filed against the juvenile.

In the trial court, the juvenile moved to suppress the evidence secured from the search of his locker, arguing that the search was unconstitutional under the standard enunciated in *New Jersey v. T. L. O.*, 469 U.S. 325 (1985), and adopted by this court in *State v. Drake*, 139 N.H. 662 (1995). The trial court disagreed, and denied the motion. A finding of true was entered on the petition. This appeal followed.

The juvenile argues that the assistant principal lacked reasonable grounds to search his locker because: (1) the assistant principal did not know the identities of the students from whom the teacher heard about the pot pipe, thus undermining the reliability of the information upon which the search was based; (2) possession of a pot pipe is not against the law, and neither the student informants nor the teacher made any direct allegations of drug possession or distribution; and (3) the assistant principal was given no specific information identifying the juvenile's locker as a place where the pot pipe might be found. Accordingly, the juvenile argues that the search of his locker violated Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the United States Constitution. We disagree.

Our review of the trial court's ruling on a motion to suppress is *de novo*, except as to any controlling facts found by the trial court in the first instance. *State v. Gubitosi*, 152 N.H. 673, 676 (2005). We first address the

defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only, *id.* at 233.

■ It is well settled that public school officials are not exempt from the constitutional prohibitions against unreasonable searches and seizures. *State v. Tinkham*, 143 N.H. 73, 75 (1998). They are, however, afforded greater flexibility than are law enforcement officials when searching for contraband. *Id.* As we explained in *Drake*:

> The right to a safe and healthy school environment necessarily vests certain responsibilities in those administering public education. Among these responsibilities is a duty to protect school children from antisocial behavior on the part of irresponsible classmates. This duty requires administrators to take preventive and disciplinary measures that must be swift and informal to be effective. Swiftness and informality are especially important in dealing with problems such as weapons that may pose the threat of immediate physical harm to other students, or drugs that could easily be destroyed or otherwise disposed of should a search be delayed. Flexibility is critical because of the importance of protecting children from dangers such as drugs and weapons when they are in the charge of public school officials.
>
> . . . .
>
> Public school officials are not law enforcement officers. Law enforcement officers are responsible for the investigation of criminal matters and maintenance of general public order. Public school administrators, on the other hand, are charged with fostering a safe and healthy educational environment that facilitates learning and promotes responsible citizenship. The special charge of school officials mandates that they be afforded greater flexibility than law enforcement officials when searching for contraband.

*Drake*, 139 N.H. at 664-66 (citations omitted). Nothing that has happened in the twelve years since we decided *Drake* suggests that public school officials today have less need for flexibility than they had in 1995.

■ In *Drake*, 139 N.H. at 666, we held that the standard for searches by public school officials under the New Hampshire Constitution is commensurate with that set forth in *T. L. O.* In *T. L. O.*, the United States Supreme Court held that "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." *T. L. O.*, 469 U.S. at 341. "Determining the reasonableness of any

search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quotations, citations, and ellipsis omitted). "Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42 (quotation and footnotes omitted). Finally, a search of a student "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342 (footnote omitted).

To demonstrate the application of the rules stated in *T. L. O.* to the facts of this case, it will be useful to describe the facts of *T. L. O.* In that case, a high school teacher found two students, including T. L. O., smoking in a lavatory. *Id.* at 328. Because smoking in a lavatory violated school rules, the teacher took the two students to the principal's office, where they met with the assistant vice principal, Mr. Choplick. *Id.* One girl admitted she had been smoking in the lavatory; T. L. O. did not, and claimed she did not smoke at all. *Id.* In response, Mr. Choplick demanded to see T. L. O.' s purse. *Id.* He opened the purse and found a pack of cigarettes. *Id.* When he reached for the cigarettes, he also noticed a package of rolling papers. *Id.* "In his experience, possession of rolling papers by high school students was closely associated with the use of marihuana. Suspecting that a closer examination of the purse might yield further evidence of drug use, Mr. Choplick proceeded to search the purse thoroughly." *Id.*

The Court's "review of the facts surrounding the search [led it] to conclude that the search was in no sense unreasonable for Fourth Amendment purposes." *Id.* at 343. In so holding, the Court noted that "[t]he incident that gave rise to this case actually involved two separate searches, with the first—the search for cigarettes—providing the suspicion that gave rise to the second—the search for marihuana." *Id.* at 343-44. The Court further explained that "[t]he suspicion upon which the search for marihuana was founded was provided when Mr. Choplick observed a package of rolling papers in the purse as he removed the pack of cigarettes." *Id.* at 347. Interestingly, T. L. O. did "not dispute the reasonableness of Mr. Choplick's belief that the rolling papers indicated the presence of marihuana." *Id.*

 Based upon the similarities between the facts of *T. L. O.* and the facts of this case, we have little difficulty concluding that the search of the

juvenile's locker did not violate his rights under either the Fourth Amendment to the Federal Constitution or Part I, Article 19 of the State Constitution. *See Drake*, 139 N.H. at 666. The search was justified at its inception because, like the rolling papers in *T. L. O.*, the report of the juvenile's possession of a large pot pipe provided the assistant principal with reasonable grounds for suspecting that a search of places where a large pot pipe might be located would also turn up marijuana which, necessarily, would be evidence that the juvenile had violated or was violating RSA 318-B:2, I (2004), which prohibits marijuana possession. *T. L. O.*, 469 U.S. at 342; *Tinkham*, 143 N.H. at 76. Moreover, given the age of the student (fifteen years old), and the moderate degree of intrusiveness of the search and its primary objective (the detection of marijuana in association with a large pot pipe), we conclude that the scope of the search, which focused upon a place where a large pot pipe might be stored, was constitutionally permissible.

The juvenile advances three arguments supporting his contention that the search of his locker was not justified at its inception. We address each in turn.

■ First, we do not agree that the information available to the assistant principal was not sufficiently reliable to justify a search of the juvenile's locker. The juvenile points out that the assistant principal did not know the identities of the student informants or the basis of their alleged knowledge, and he also notes that there was no other information linking him to any violation of school rules. However, while the assistant principal did not know the identities of the students who provided information about the juvenile and his pot pipe, he obviously did know the teacher who reported the information to him, and the teacher knew the circumstances under which he obtained that information. While more detailed information about the circumstances in which the teacher heard about the pot pipe, or the circumstances in which the students learned about it, would be desirable or even necessary under a different legal standard such as "reasonable suspicion" or "probable cause," it was reasonable for the principal to assume that the teacher vouched for the reliability of the information he was passing along, and that if the teacher had concerns about the sources of his information or the manner in which he collected it, he would have expressed those concerns. Accordingly, the fact that the assistant principal did not know the identities of the student informants does not invalidate the search. *See Drake*, 139 N.H. at 663 (affirming denial of student's motion to suppress even though search was based upon a completely anonymous tip). We reach the same conclusion regarding the fact that the assistant principal did not take the time to conduct a further

investigation into the reliability of the teacher's reports before taking action to detect or prevent the possible commission of a crime on school property. *See Tinkham*, 143 N.H. at 76.

Moreover, notwithstanding the juvenile's contention that *Tinkham* involved "more direct and more corroborated allegations of drug activity than does this case," the report in *Tinkham* was, in at least one way, more attenuated than the report here. In *Tinkham*, the student informant told school officials "that she had purchased drugs from the defendant *during the previous day*," *id.* (emphasis added), while in this case, the student informants reported activity—possession of the pot pipe—that was ongoing at the time of their report. Finally, the quality of the information available to the assistant principal in this case was virtually identical to the quality of the information available to the assistant principals in *State v. Michael G.*, 748 P.2d 17, 18 (N.M. Ct. App.), *cert. denied*, 747 P.2d 922 (N.M. 1987), in which the New Mexico Court of Appeals held that the search of a student's locker was constitutional, even though the coach who told two assistant principals that the student had tried to sell another student marijuana "did not identify the student [informant] or provide any other details about the alleged attempted sale."

█ Second, it is of no moment that the student information that prompted the search of the juvenile's locker did not describe unlawful activity. We recognize that mere possession of drug paraphernalia such as the pipe in this case is not unlawful, *see* RSA 318-B:2, II (2004) (criminalizing, with respect to drug paraphernalia, only possession with intent to deliver), but to the extent that the purpose of a pot pipe is to facilitate the use of marijuana, it was not unreasonable for the assistant principal to believe that a search for the pipe would also turn up marijuana. In *T. L. O.*, the Supreme Court held that the student's possession of cigarettes, which was neither illegal nor against school rules, was evidence that the student had been smoking in the lavatory, an act that did violate school rules, *T. L. O.*, 469 U.S. at 344, and further held that the possession of rolling papers, which are legal to possess, suggested the possession of marijuana, which is illegal, *id.* at 347. Moreover, a school official's undeniably legitimate interest in preventing the use of a pot pipe on school grounds, *see Drake*, 139 N.H. at 664-65, further underscores the reasonableness of the assistant principal's search. Finally, the circumstances of this case include the fact that the juvenile's fellow students mentioned his possession of a pot pipe on two separate occasions. That the teacher heard on successive days that the juvenile had a pot pipe supports a reasonable inference that he was less than circumspect about being seen with the pipe and may have even wanted people to know he had

it. One reason why a person might want others to know that he or she has a pot pipe could be to advertise the availability for sale of either marijuana or paraphernalia for the ingestion of marijuana, both of which are unlawful to sell. *See* RSA 318-B:2, I, II. In sum, the fact that mere possession of drug paraphernalia is not unlawful did not make it unreasonable for the assistant principal to base a search for marijuana upon a report that the juvenile was in possession of a pot pipe.

■ Third, the constitutionality of the search is not compromised by the fact that the assistant principal searched the juvenile's locker without information specifically identifying the locker as a place where the pot pipe might be found. The initial report referred to the juvenile's possession of "a large pot pipe." Because the assistant principal had reasonable grounds for suspecting that a search for the pipe would turn up evidence that the juvenile had violated or was violating the law against possessing marijuana, RSA 318-B:2, II, it was reasonable for him to begin his search by examining the juvenile's locker, which was a plausible location for storing a large pot pipe.

■ Finally, while we are satisfied that the search at issue here met the *T. L. O.* standard we adopted in *Drake*, the development of the factual record in this case demonstrates to us the need to provide further guidance regarding the factors that both school administrators and trial courts should consider to determine whether a search of a student is justified at its inception, as required by both *T. L. O.*, 469 U.S. at 341, and our cases, *see Tinkham*, 143 N.H. at 76; *Drake*, 139 N.H. at 666. Courts around the country have adopted various sets of factors. *See, e.g., State v. B.A.S.*, 13 P.3d 244, 246 (Wash. Ct. App. 2000); *Michael G.*, 748 P.2d at 19-20; *Interest of L.L.*, 280 N.W.2d 343, 351 (Wis. Ct. App. 1979). We are most persuaded by, and hereby adopt for use in New Hampshire, as a starting point for analysis, the following set of factors:

> the child's age, history and record in school; the prevalence and seriousness of the problem in the school to which the search was directed; the exigencies in making a search without delay and further investigation; the probative value and reliability of the information used as a justification for the search; and the particular teacher or school official's experience with the student.

*S.V.J. v. State*, 891 So. 2d 1221, 1223 (Fla. Dist. Ct. App. 2005) (quotation omitted). Like the courts in Florida, where this set of factors originated, we recognize "that these factors are simply a starting point and not a complete and exhaustive list of all possible considerations." *Id.* (quotation omitted).

Here, notwithstanding the lack of factual findings directed to some of the *S.V.J.* factors, there can be no gainsaying that unlawful possession of any controlled drug in any school is a serious problem that needs to be identified and addressed expeditiously. *See Drake*, 139 N.H. at 664-65; *T. L. O.*, 469 U.S. at 339-40. Moreover, the information upon which the assistant principal acted was provided by a teacher, and it was reasonable for the assistant principal to believe that the teacher would have reported any concerns about the reliability of the information he was passing along. Accordingly, the search in this case was justified at its inception, based upon the *S.V.J.* factors, as applied with the appropriate degree of flexibility.

Because the search in this case was reasonable under all the circumstances, we affirm the trial court's order denying the juvenile's motion to suppress.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.