Derry Family Division
No. 2010-665

IN RE ANTHONY F.

Argued: September 21, 2011
Opinion Issued: January 13, 2012

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The juvenile, Anthony F., appeals an order by the Derry District Court (*Moore*, J.) denying his motion to suppress evidence supporting a delinquency petition against him. We reverse and remand.

The following facts are undisputed or are supported by the record. On April 8, 2010, at approximately 9:00 a.m., a parking lot monitor at the juvenile's high school radioed one of the school's assistant principals that a student was walking away from the school. The monitor, along with both assistant principals, caught up with the student, later identified as the juvenile, as he was halfway across the lacrosse field, which was approximately 200 yards from the school building.

The juvenile initially refused to return to the school, stating that he did not feel well; however, the parking lot monitor and the assistant principals

persuaded him to do so. The assistant principals escorted him back and directed him to an empty lunchroom.

The assistant principals then twice informed the juvenile that he was going to be searched. The juvenile asked why he had to be searched and they explained that it is the school's policy to search students who return to school after leaving an assigned area. They testified that, on average, about twelve to twenty students per year leave an assigned area and, upon return, such students often have contraband such as alcohol, drugs and weapons in their possession. One assistant principal asked the juvenile if he had "anything on [him] that [he] shouldn't have on school property." The juvenile eventually handed over a small bag of marijuana that he retrieved from inside his sock. Subsequently, a delinquency petition was filed against the juvenile.

The juvenile moved to suppress the marijuana evidence, arguing that the search was unconstitutional under the New Hampshire and Federal Constitutions. The State countered that there was no search under the law, but even if a search occurred, it was constitutionally valid.

The trial court denied the juvenile's motion, finding that, while there was a search, the search and the school policy were reasonable and the policy was "evenly applied." The court then entered a finding of true to possession of marijuana based on the stipulated facts. This appeal followed.

On appeal, the juvenile argues that the search was unreasonable under Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. The juvenile argues that there was no "individualized suspicion" of any wrongdoing on his part and, therefore, the search was not justified at its inception. The State renews its arguments that there was no search, but, even if there was a search, it was "constitutionally permissible."

Our review of the trial court's ruling on a motion to suppress is *de novo*, except as to any controlling facts determined by the trial court in the first instance. *State v. Gubitosi*, 152 N.H. 673, 676 (2005). We first address the juvenile's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231-33 (1983), and cite federal opinions for guidance only. *Id.* at 232-33.

■■ At the outset, we turn to whether there was a search when the assistant principals twice told the juvenile that he was going to be searched and then asked him if he had "anything on [him] that [he] shouldn't have on school property." "Our State Constitution protects all people, their papers, their possessions and their homes from unreasonable searches and seizures." *State v. Mello*, 162 N.H. 115, 119 (2011) (quotation omitted); *see* N.H. CONST. pt. I, art. 19. We have recognized that an expectation of privacy plays a role in the protection afforded under Part I, Article 19.

*Mello,* 162 N.H. at 119. Thus, without an invasion of the juvenile's reasonable expectation of privacy, there has been no violation of the juvenile's rights under Part I, Article 19. *See State v. Robinson,* 158 N.H. 792, 796 (2009).

> Certain constitutional rights apply equally in the public school setting as elsewhere. These include rights under part I, article 19 of the New Hampshire Constitution. Public school students have legitimate privacy interests in a variety of personal items they bring to school. These privacy interests are not waived when the student merely passes through the schoolhouse door.

*State v. Drake,* 139 N.H. 662, 664 (1995) (citations omitted).

■ Here, these privacy interests are not disputed. Rather, the State argues that "[b]ecause the school officials neither searched the juvenile's belongings nor commanded him to reveal anything, their conduct did not amount to a search in the constitutional sense." We are not persuaded that the lack of physical intrusion or the lack of an explicit command rendered their conduct not a search. The assistant principals twice informed the juvenile that he was going to be searched and then immediately inquired into what he had on his person. We see no meaningful distinction between twice telling the juvenile that he was going to be searched and then asking if he had "anything on [him] that [he] shouldn't have" and "command[ing] him to reveal" what he had. The assistant principals' conduct in this case was akin to a command. Therefore, we find that the assistant principals' actions constituted a search. *Cf. Sanders v. State,* 732 So. 2d 20, 21 (Fla. Dist. Ct. App. 1999) ("When a suspect empties his pockets in response to an officer's directive that he do so, the legal effect is the same as if the officer had himself searched the suspect's pockets."); *State v. B.A.S.,* 13 P.3d 244, 246 n.3 (Wash. Ct. App. 2000) ("A school official's demand that a student empty his or her pockets constitutes a search."). *But cf. State v. Shaw,* 736 So. 2d 951, 953 (La. Ct. App. 1999) (finding no illegal search occurred where an officer requested that the defendant empty her pockets as opposed to directing, ordering, instructing, or demanding).

■ We next address whether the search of the juvenile was reasonable. We have held that

> [t]he standard for searches by public school officials under the New Hampshire Constitution is commensurate with that set forth in [*New Jersey v. T.L.O.,* 469 U.S. 325 (1985)]. In *T.L.O.,* the United States Supreme Court held that the legality of a search of a student should depend simply on the reasonableness, under all

the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place. Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

*In re Juvenile 2006-406*, 156 N.H. 233, 236-37 (2007) (quotations and citations omitted). Here, both parties base their arguments solely on the first prong of the test. Because neither party analyzes the second prong, we restrict our analysis accordingly.

■ We have adopted a non-exhaustive list of factors to provide guidance to the trial courts and school administrators for determining whether a search is justified at its inception. As a starting point for analysis, the following set of factors should be considered:

[1] the child's age, history and record in school; [2] the prevalence and seriousness of the problem in the school to which the search was directed; [3] the exigencies in making a search without delay and further investigation; [4] the probative value and reliability of the information used as a justification for the search; and [5] the particular teacher or school official's experience with the student.

*See id.* at 240 (quotation omitted).

The State argues that the search was "constitutionally permissible" because it was justified at its inception. We disagree. Aside from the fact that the juvenile was one month shy of his fifteenth birthday at the time of the incident the record is devoid of any factual findings with respect to his history and record in school, or the assistant principals' prior experience with him. The only information available about the prevalence of any drug problem in the school is the testimony of one assistant principal that about twelve to twenty students per year leave an assigned area and often they have alcohol, drugs or weapons in their possession upon return. However, another assistant principal testified that these searches were not a frequent occurrence during the past three years.

■ The facts of this case do not support a finding of reasonable grounds for suspecting that a search of this juvenile would turn up contraband. The assistant principals searched the juvenile because it was school policy to

search all students who return to school after leaving an assigned area. The record reveals, however, that the juvenile was leaving the school, not returning. It was school officials who forced his return. While there was some testimony indicating that previous searches of students who had left school and returned had uncovered contraband, there was no evidence linking the juvenile in this case to the alleged infraction for which they searched him; namely, possession of drugs, weapons, or alcohol. *See Com. v. Damian D.*, 752 N.E.2d 679, 682-83 (Mass. 2001) (finding no reasonable grounds to search the juvenile where the search was based solely on the juvenile's truant behavior, *i.e.*, being out of school, missing class, and failing to bring his mother to school to address the truancy); *cf. In re Juvenile 2006-406*, 156 N.H. at 238 (finding reasonable grounds to search the juvenile where it was reported that the juvenile had a large "pot pipe" in his possession); *Drake*, 139 N.H. at 663, 667 (finding reasonable grounds to search the juvenile where the school received an anonymous telephone call that the juvenile would be bringing drugs into school, teachers had expressed concern that the juvenile was using and distributing drugs, and a school administrator was informed that the juvenile had been recently arrested for drug possession). Accordingly, we find that the search of the juvenile was not justified at its inception and, therefore, was unreasonable. *See B.A.S.*, 13 P.3d at 246 (finding the search of the juvenile was unreasonable where the sole basis for the search was the school administrator's belief that the juvenile "had violated the school's closed campus policy" and because the school had a policy that all students seen in the areas of the parking lot without permission are subject to a search).

■ Finally, we agree with the juvenile that "the search may not be upheld under the United States Supreme Court's suspicionless school search jurisprudence." This line of cases is readily distinguishable from this case in that the consequences to the student resulting from the search in those cases did not include turning over the results to law enforcement or lead to academic discipline. *See Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 658 (1995); *see also Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 833 (2002). We note that the State does not argue to the contrary.

Because we reverse under the State Constitution, we need not reach the federal issue. *State v. Orde*, 161 N.H. 260, 264 (2010).

*Reversed and remanded.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.